**Lonnie DANIELS, Plaintiff,**

v.

**Robert H. FINCH, Secretary of Health, Education & Welfare, now Elliott Richardson, Defendant.**

**Civ. A. No. 69–C–86–A.**

United States District Court,
W. D. Virginia,
at Abingdon.

Oct. 27, 1970.

W. Clyde Dennis, Grundy, Va., Ronald W. May, Pikeville, Ky., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION

WIDENER, District Judge.

Lonnie Daniels has filed a complaint requesting review of the final decision of the Secretary of Health, Education and Welfare as provided by § 205(g) of the Social Security Act, 42 U.S.C., § 405 (g). He filed an application on May 20, 1968 for the establishment of a period of disability and disability insurance benefits, under Sections 216(i) and 223, respectively, of the Social Security Act, 42 U.S.C., §§ 416(i) and 423. After an initial denial of his application, he was afforded a hearing. The hearing examiner, in a written opinion, denied disability and disability insurance benefits, and that became the final decision of the Secretary on August 6, 1969, when the Appeals Council affirmed the decision of the hearing examiner. Both parties have filed motions for summary judgment and memoranda of law in support thereof.

■ The sole issue before this court is whether, from the record, the decision of the Secretary is supported by substantial evidence. If this court finds that the Secretary's decision is supported by substantial evidence, our inquiry must cease, and the Secretary's decision will be affirmed. Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962).

The record discloses that claimant was born February 20, 1939, in Buchanan County, Virginia, and received an eighth grade education. He is married and resides there with his wife and three children. He claims he has been disabled since January 27, 1968 due to bleeding ulcers, back condition and smothering spells. Claimant testified that his back had given him trouble since he was sixteen and that he has smothering spells about once every two weeks. His work experience includes laying gas pipelines, digging ditches, hauling timbers to the mines, coal mining, brickmason helper and delivering bottled gas. He has never been in the military service, having been

rejected in 1961, he says, for reasons unknown to him.

Claimant was hospitalized for treatment of bleeding ulcers and influenza in December, 1967 and returned to work in January, 1967, but remained for only two weeks. He has not worked since. There is a history of ulcers in claimant's family. He refused recommended remedial surgery for his ulcer condition for the reason that others he had talked to told him it had not helped them, and because he was apprehensive and fearful of undergoing surgery. He stated that he takes medication for his nerves and ulcer. Claimant's testimony was corroborated by his father.

The first medical report submitted by claimant dated February 21, 1956 when claimant was sixteen, was made by Dr. J. A. Robinson. The report notes that claimant strained his back while lifting sacks of feed. Diagnosis was acute low back strain, and claimant was released practically symptom-free after three days of conservative treatment.

The second report, dated August 19, 1959, was made by Dr. B. D. Berry, who treated him in Grundy Hospital, Virginia, for being hit by a truck. Claimant was hospitalized four days. Final diagnosis was multiple contusions.

The third medical report shows claimant was hospitalized on December 20, 1967 and treated for influenza and ulcer. Final diagnosis was: duodenal hemorrhage due to ulcer. He was again hospitalized on February 19, 1969 for evaluation of his ulcer and surgery was indicated. He retained a bland diet and required medication. He refused to have surgery and was discharged with a final diagnosis of duodenal ulcer.

Claimant underwent a physical examination by Dr. J. P. Sutherland, at government expense, on May 27, 1968. His chief complaints were shortness of breath, pain in stomach, pain in lower back. The final diagnoses were: (1) psychoneurosis—depressed type; (2) gastric ulcer; (3) hypertrophic arthritis of spine; and (4) old fracture of rib left.

He showed tenderness and muscle spasm of para spinal muscles of cervical and lumbar spine and moderate limitation of flexion of spine.

Claimant underwent a second examination, at government expense, on September 5, 1968 by Dr. Robert F. Baxter, also claimant's treating physician. Final diagnoses were: (1) chronic peptic duodenal ulcer syndrome; and (2) chronic pansinobronchitis.

A psychiatric report by Dr. Pierce Nelson dated December 19, 1968 noted that claimant had no future plans "except to try to get on Social Security." Claimant's condition was diagnosed as anxiety reaction. Dr. Nelson pointed out there was a borderline type of withdrawal which was at least suggestive of a psychotic behavior. Dr. Nelson expressed the opinion, however, that claimant could improve and become much more comfortable with medication and treatment. Psychological testing revealed claimant had a full scale pro-rated I.Q. of 88, which places him in the dull normal range of intellectual functioning.

Dr. Baxter, his treating physician, stated in a note dated April 28, 1969, that claimant was disabled and that he should be granted Social Security disability benefits, *or be retrained for some lighter type activity.*

Dr. Nelson, in response to a request by claimant's attorney for clarification of his initial report, stated in a letter dated June 18, 1969:

"I think the greatest concern from a psychiatric point of view with Mr. Daniels [is] that he will lapse into a state of helplessness and invalidism and not function up to his potential * * * I think stimulation and encouragement to function at some kind of work, especially that which is of light work character, and which he has a chance to meet people, socialize with people, will be of great benefit to him. He could extend his ability and improve his functions over the next several months and years."

562

Dr. Nelson also noted that:

"In answer to the question about my opinion whether Mr. Lonnie Daniels of Stacy Rural Station, could engage in any kind of simple tasks such as work around a filling station, light delivery truck driver and work in grocery stores; it is my opinion that he could do some of this work. He has restricted his own driving because of a problem of alcohol, which he indicates he stopped drinking about a year and a half ago. He has also been engaging in chores around the house and even had a 'mashed' thumbnail, indicating some activity, and I thought that he could engage in rehabilitation type of training, especially if he were offered psychiatric treatment along with such training."

The claimant has the burden of proving that he is under a disability as defined by the Social Security Act, § 216(i), 42 U.S.C. § 416(i). Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962); Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). The burden is not on the Secretary to make an initial showing of non-disability. Justice v. Gardner, 360 F.2d 998 (6th Cir. 1966). However, the claimant need not carry his burden to a point beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

The uncontradicted medical evidence shows that claimant suffers from a bleeding duodenal ulcer, a back impairment which is not clearly defined, and depressed anxiety reaction. However, it is clear that the mere proof of the existence of an impairment with no showing as to its severity will not suffice to establish a disability within the meaning of the Social Security Act. Durham v. Gardner, 392 F.2d 168 (4th Cir. 1968). Although claimant testified that his ulcers and back condition caused him nearly constant pain, none of the examining doctors expressed the opinion that claimant was so disabled. On the contrary, even claimant's treating physician believed that he could be retrained for lighter work. Furthermore, Dr. Nelson, the psychiatrist, stated that claimant was a suitable candidate for rehabilitation and felt that it would be helpful from a psychiatric standpoint for him to engage in some type of light work. Evidence of the existence of any back impairment is in material conflict, and the existence of any type of pulmonary malfunction is not supported by the record. The hearing examiner properly considered the effect of the several alleged impairments of the claimant, and found that they did not, either singularly or in combination, prevent claimant from engaging in substantial gainful activity. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962); Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968).

Furthermore, on the assumption that claimant was disabled from performing certain types of heavy work, the vocational expert testified that claimant had the residual capacity to perform other types of moderate or light work which existed in substantial numbers in the national economy.

Although the hearing examiner did not in large part base her decision on the fact that plaintiff had refused surgery to correct his ulcer, the court is convinced from a reading of the record that this fact is most persuasive. It is apparent from the record that one of plaintiff's principal complaints is his ulcer. It is probable that this is really his greatest physical disability. Plaintiff's refusal to be operated on for the ulcer puts his claim within the line of cases holding that an ailment subject to remedy cannot be the basis for a claim where treatment is refused. Bradey v. Ribicoff, 298 F.2d 855 (4th Cir. 1962).

From a careful reading of the record, it is apparent that there is substantial evidence to support the conclusion of the hearing examiner that this thirty-one-year-old claimant has not established that his disabilities, singularly or in combination, are of such severity or duration as to entitle him to disability insurance benefits under the Social Security Act. Accordingly, an order is this

day entered granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment.