**Virginia R. COLLINS, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 77–0112–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

Sept. 30, 1977.

---

458

William H. Robinson, Smith, Robinson & Vinyard, Abingdon, Va., for plaintiff.

E. Montgomery Tucker, Asst. U. S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION AND JUDGMENT

TURK, Chief Judge.

Plaintiff, Virginia R. Collins, has petitioned this Court to review the final decision of the Secretary of Health, Education and Welfare denying her entitlement to social security disability benefits. Jurisdiction of this Court is pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). That section provides in part that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive  .  .  .." The only issue before this Court is whether the Secretary's decision is supported by substantial evidence. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

The plaintiff's husband, Kenneth A. Collins, filed an application for social security disability benefits on February 7, 1973, alleging that he became unable to work due to shortness of breath in March of 1972.

(Tr. 75). However, he died on December 21, 1975, due to acute alcoholism and his widow was later substituted to prosecute his claim for benefits. (Tr. 29, 86). The decedent was born on January 19, 1933, had a seventh grade education, and last worked in 1972 as a construction worker. Prior to his construction work, the decedent had been employed as a coal miner for 14 or 15 years. (Tr. 39). He also had been variously employed as a laborer for a railroad, a staff driver in the army, and a welder. (Tr. 36–39). The decedent's wife testified that the decedent had suffered from dizziness, nervousness, chest pains, and alcoholism. At the administrative hearing the decedent's wife testified that the decedent had suffered from an acute alcoholic problem which ultimately resulted in his death. The decedent was examined on February 6, 1973, by Dr. C. L. Miranda, complaining of a burning sensation in both feet, with swelling while standing, coughing, headaches, dizziness, and numbness in the right temple and face. (Tr. 115). As a result of the examination Dr. Miranda diagnosed the residual of frostbite in both feet, emphysema, the residual of head and face injury, and a deviated nasal septum. (Tr. 115). On April 12, 1973, Dr. E. Ingram diagnosed chronic obstructive lung disease and simple pneumoconiosis. (Tr. 125). On September 26, 1973, Dr. J. M. Straughan, diagnosed fibrosis on the basis of pneumoconiosis. (Tr. 124). The decedent was admitted to the hospital on March 19, 1974, because of "lethargy and slurred speech." (Tr. 137). Although there was evidence of drinking the initial diagnosis noted that intoxication with drug overdose should be ruled out. (Tr. 138). Another examination was conducted on March 23, 1974, by Dr. P. P. Barongan, who, among other findings, made a diagnosis of pneumoconiosis. (Tr. 126). Dr. Richard O'Neill examined the decedent on May 14, 1974, concerning complaints of breathing, chest pains, headaches, coughing, swelling of the feet, and bad nerves. (Tr. 127–129). Among other things, he found decedent to be suffering from a "psychiatric disease." (Tr. 128). Much of the other medical evidence is di-

rected to a period of time subsequent to the expiration of the decedent's insured status. However, Dr. Barongan noted on September 20, 1976, that he "treated Mr. Kenneth Collins for chronic peptic syndrome secondary to chronic alcohol intake, chronic obstructive lung disease, and an anxiety neurosis with depression"; as a result of previous examinations, it was Dr. Barongan's opinion that the decedent had been disabled as of May 25, 1973. (Tr. 158).

Dr. Harmon, a vocational expert, was present at the administrative hearing and testified that from 1972 until the time of his death in December of 1975, considering decedent's age, education, work experience, and physical limitations, substantial gainful employment was *not* existing in the national economy of which the decedent was capable of performing. (Tr. 64). The Administrative Law Judge then cautioned the vocational expert that in forming his opinion in the case he was to take into consideration "that a job vacancy does not have to exist and work does not have to exist where the claimant lives, and that it is immaterial whether the claimant would be hired if he applied for work." (Tr. 64). In response to this instruction, the vocational expert stated that he understood those qualifications. (Tr. 64). The Administrative Law Judge then *retorted* with a long hypothetical question concerning "a hypothetical claimant" which involved, among other assumptions, that the decedent could lift 25 pounds and was capable of light and sedentary work prior to a back injury in June of 1975. (Tr. 64–66). In response to this question the vocational expert testified that there would be jobs existing in substantial numbers in the national economy of which "we could expect a person under this assumption" to perform. (Tr. 66). He then related such work as taxi driving, the driving of other kinds of light vehicles, and manufacturing work of a bench assembly nature or a material handling nature. (Tr. 66). He did, however, fail to point to specific jobs existing in the national economy.

The Administrative Law Judge found that the decedent had been suffering from

**460**

"suspected pneumoconiosis and chronic obstructive airways disease and alcoholism." (Tr. 15). However, he concluded that "[p]rior to June 30, 1974, claimant retained a residual functional capacity to perform work consisting of a light or sedentary nature such as driving a taxi, light vehicle driver, manufacturing work of a bench assembly nature or material handling nature." (Tr. 15). Consequently, he concluded that the decedent was not under a disability prior to June 30, 1974, the date on which he last met the earnings requirements of the Act. (Tr. 15).

For purposes of the Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Title 42 U.S.C. § 423(d)(2)(A) further defines when an individual's physical or mental impairment is of sufficient severity so as to be disabling:

An individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work. For purposes of the preceding sentence . . ., "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

The claimant has the burden of proving such a disability. *Blalock v. Richardson*, 483 F.2d 773 (4th Cir. 1972). However, once a plaintiff establishes a *prima facie* case of disability the burden of going forward shifts to the Secretary. *Wyatt v. Weinberger*, 519 F.2d 1285 (4th Cir. 1975). A *prima*

*facie* case is established when it is proven that the claimant is unable to perform his customary occupation due to a medical condition and, consequently, the burden of going forward shifts to the Secretary. *Hicks v. Gardner*, 393 F.2d 299 (4th Cir. 1968); *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975). The Secretary's resulting burden is two-fold:

First, he must show that claimant, considering his age, his education, his work experience, his skills and physical shortcomings, has the capacity to perform an alternative job. Second, this job must be shown to exist in the national economy.

*McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

Upon a review of the record, this Court must necessarily conclude that the Secretary's decision is not supported by substantial evidence. The evidence indicates that the claimant was precluded from performing his usual employment, and this is reflected by the Administrative Law Judge's finding that the decedent "retained the residual functional capacity to perform work of a light or sedentary nature." (Tr. 15). Once the claimant established the decedent's physical inability to perform the work he previously performed, while meeting the earnings requirements of the Act, it became incumbent upon the Secretary to offer evidence of the decedent's capacity to perform an alternative job considering his age, education, work experience, skills and physical shortcomings. Evidence was tendered as to such capacity but it is not supported by the Secretary's claim that his decision is grounded upon substantial evidence. A vocational expert testified that considering the decedent's "age, education, past work experience, and his impairments," in his opinion there were not substantial, gainful, employment opportunities available in the national economy from 1972 until the time of decedent's death in December, 1975, of which the decedent was capable of performing. (Tr. 64). Furthermore, for two reasons the deficiency was not cured by the Administrative Law Judge's question pertaining to a "hypotheti-

cal claimant" who had the physical ability to perform sedentary and light work as well as the ability to lift 25 pounds. (Tr. 64–66). First, by this line of questioning the Administrative Law Judge was placing conclusions before the vocational expert and not established facts upon which a meaningful opinion could have been rendered. Consequently, the question and the evidence established by the question were insufficient:

> A vocational expert's opinion in a disability case is only worthwhile if it is based upon a consideration of all other evidence that has been brought out in the case.

*Chester v. Mathews*, 403 F.Supp. 110, 118 (D.C.Md.1975). Second, the relevant inquiry is not what a hypothetical individual could perform but what a *particular* insured individual could perform.

Having concluded that the Secretary's decision is not supported by substantial evidence this Court will reverse. Title 42 U.S.C. § 405(g) authorizes the Court to reverse without remanding. "The statute itself contemplates remand for additional evidence only 'on good cause shown.'" *Taylor v. Weinberger*, 512 F.2d 664, 669 (4th Cir. 1975). The evidence indicates that the decedent was incapable of performing his usual occupation prior to the termination of his insured status. The Secretary, however, failed to discharge his affirmative burden of demonstrating an alternative job of which the decedent was capable of performing. To the contrary, the evidence establishes that the decedent was incapable of performing an alternative job. Having failed to demonstrate "good cause" for remanding this case, judgment will be entered for the claimant granting disability benefits.

During the administrative hearing decedent's disability onset date was amended to December 18, 1972. (Tr. 51). As it is plain that decedent was unable to return to his usual occupation on that date, a closed period of disability will be awarded from that date until the date of decedent's death on December 21, 1975.

Summary judgment for plaintiff.