Lawrence BOLLING, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary, Department of Health and Human Services, Defendant.

Civ. A. No. 87–0133–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

March 17, 1988.

Joseph E. Wolfe, Norton, Va., for plaintiff.

E. Montgomery Tucker, Asst. U.S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

GLEN M. WILLIAMS, District Judge.

This case is again before the court on defendants's motion for relief from judgment. The court remanded the case because the Administrative Law Judge (ALJ) disregarded the "undisputed evidence of record coming from examining or treating physicians. *See* 20 C.F.R. § 404.944 (1987)." Defendant says the court has

thus ruled "that the Secretary is required to accept Dr. Nelson's findings as conclusive" and thereby "deprive[s] the Administrative Law Judge of his fact finding function." The Secretary's argument goes on to state that this court is obligating an ALJ "to adopt a doctor's opinion which is contrary to all other evidence of record." The Secretary has completely misunderstood the purport and meaning of this court's decision.

The Secretary is absolutely correct in that this court has no right to tell the Secretary it must accept "Dr. Nelson's findings as conclusive." On the other hand, the Secretary has no right to "disregard" Dr. Nelson's testimony simply because it does not like Dr. Nelson, nor because the Secretary believes Dr. Nelson's reports are incorrect most of the time. The Secretary should bear in mind that Dr. Nelson is not on trial in this case; this is a case of great importance to Lawrence Bolling, and his day in court should not be shot down because an ALJ does not like Dr. Nelson and totally refuses to consider his evidence. Obviously, the ALJ had decided prior to the hearing that he would never accept Dr. Nelson's report if it turned out to be the only evidence in the case. Note what the ALJ says: "[H]is attorney has sent him to Dr. Nelson, who routinely submits reports indicating that claimants have multiple impairments.... Dr. Nelson's reports are *generally*, and certainly in this case *exaggerated* and *not substantiated by his own narrative findings* or the medical reports from other physicians." TR.14. This court concludes that the ALJ believes there is something fundamentally wrong with a lawyer sending a client to a doctor, or a particular specialist; a lawyer who fails to do this, in many instances, would be guilty of malpractice. Furthermore, assuming that Dr. Nelson generally exaggerates and ignores his own narrative findings, this does not justify the complete disregard of Dr. Nelson's report in the case of the claimant Lawrence Bolling.

■ There are cases in which the law predicates recovery on expert testimony. 7 Wigmore, Evidence §§ 2090, 2090a (Chad-

bourn rev. 1978). On the other hand, some cases do not require experts. Where the trier of fact has such common understanding as to be able to comprehend the essential facts and draw correct conclusions from the facts as would a witness of special or peculiar training, then an expert is not necessary. *United States Smelting Co. v. Parry*, 166 F. 407, 411, 415 (8th Cir.1909); *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962). Obviously, the ALJ in this case does not possess such understanding as to be able to determine a mental condition without the aid of an examining expert. If Dr. Nelson's evidence is excluded, then there is no examining expert, and thus there is improper adjudication of Mr. Bolling's case.

■ There are instances in which the trier of fact may completely disregard an expert witness. First, if a witness does not possess the necessary degree of education, experience or learning to express an opinion, such opinion may be disregarded. *See* 2 Wigmore, Evidence § 561 and cases cited therein. Such is not the case with Dr. Nelson. His qualifications are listed at page 152 of the transcript as being those set forth at page 4490 in the American Medical Directory (1985) and these qualifications have not been attacked unless one goes outside the record. Dr. Leizer, a clinical psychologist with a Ph.D. and five years of practice, a member in good standing with the Virginia Academy of Clinical Psychologists, has also given an opinion in this case. A psychologist may testify to mental capacity, just as a psychiatrist or other physician. *United States v. Brawner*, 471 F.2d 969, 994 (D.C.Cir.1972).

■ It appears that the Social Security Regulations pertaining to mental impairments generally treat the opinions of psychiatrists and clinical psychologists as of equal weight. 20 C.F.R. Chap. III Pt. 404 Subpt. P, Appendix 1, § 12.00. However, in evaluating opinions of clinical psychologists, neither the American Medical Association, the Council of the American Psychiatric Association nor the Executive Council of the American Psychoanalytical Associa-

tion considers that clinical psychologists can *diagnose* or *treat* mental illness, and in so doing their participation must be coordinated under medical responsibility. *Jenkins v. United States*, 307 F.2d 637, 648, 649 (Burger, Cir. J. concurring) (D.C.Cir. 1962). For the purpose of this opinion, despite Dr. Leizer's five years of experience as a clinical psychologist, his evidence will be given the full weight accorded to any other non-examining physician.

■ Secondly, the trier of fact should determine whether the reasons given in support of the opinion are sound. *See generally Jenkins v. United States*, 307 F.2d 637, 642–46 (D.C.Cir.1962). In the instant case, the ALJ says that Dr. Nelson has exaggerated and his opinion is not substantiated by his own facts. The court cannot accept such a simplified, unreasoned statement. The court sees nothing in the narrative statement which conflicts with the findings. There is nothing inherent in the report of Dr. Nelson to discredit it.

Thus, we come to the third factor to be considered by a fact finder in determining the value of expert evidence; that is, whether the opinion is outweighed by other evidence in the case. In Mr. Bolling's case, the ALJ concludes that "the claimant has a severe impairment which limits his ability to meet the basic demands of work activity." Indeed, the ALJ could not have found otherwise since Dr. Nelson is supported by Dr. Leizer, who is apparently an expert hired by the ALJ since he is shown as a medical adviser. Both experts agree that Bolling has symptoms of a Listed 12.07 Disorder, a somatoform disorder for which there are no demonstrable organic findings. In Dr. Nelson's "Minnesota Report" he describes the symptomatic pattern as follows:

"The client is exhibiting much somatic distress and may be experiencing a problem with his psychological adjustment. His physical complaints are *probably extreme....* He is likely to be reporting a great deal of pain, and feels that others do not understand how sick he is feeling.

\*     \*     \*     \*     \*     \*

His present disorder could reflect, in part, an exaggerated response to environmental stress."

(TR. 126). In Dr. Leizer's report, he has found present evidence of "unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury." (TR. 142). Dr. Leizer has found the degree of limitation "slight" as to Difficulties in Maintaining Social Functioning, whereas Dr. Nelson has found it "moderate" to "marked." Both of them have found, and so has the ALJ that claimant has a severe impairment, but Dr. Nelson has also found Deficiencies of Concentration and Episodes of Deterioration or Decompensation, etc. to be "frequent" (TR. 135) whereas Dr. Leizer has marked these "never." (TR. 144).

■ Dr. Leizer's evidence cannot be accepted in lieu of Dr. Nelson's because evidence of a non-examining physician of equal rank cannot be accepted over and in lieu of that of an examining physician. This is hornbook-social security law both from regulations and cases. *Hayes v. Gardner*, 376 F.2d 517 (4th Cir.1967); *Martin v. Sec'y*, 492 F.2d 905, 908 (4th Cir. 1974); *Leonard v. Schweiker*, 724 F.2d 1076, 1078 (4th Cir.1983); *Smith v. Schweiker*, 795 F.2d 343, 348 (4th Cir.1986).

This case illustrates vividly the weight of non-examining physicians' reports. Obviously, a non-examining physician can give good opinions on many subjects, such as review of x-rays, etc. But to determine a person's mental capacity in a case such as this without an examination is highly suspect, if not incredible.

Finally, the court will comment on a number of cases cited by the Secretary to allege that Dr. Nelson is incompetent. It is common knowledge that psychiatrists' opinions differ. This matter was highly publicized in the attempted assassination of President Reagan, where differences in the opinions of various psychiatrists who testified became an ugly scar on the profession. Indeed, this court sympathizes with the Secretary's frustration regarding mental illness generally. The court has great suspicions of all psychiatrists, not because of

dishonesty or incompetence, but because of the lack of knowledge generally about the human mind. But we must realize that in a large percentage of cases, medical doctors and specialists also are in total disagreement. This court rarely has a disability social security case in which there is no conflicting medical evidence; otherwise, the case would probably not be in this court. Regarding Dr. Nelson specifically, this court is impressed with the number of times other psychiatrists are in total agreement with Dr. Nelson, and the number of times this court has relied on Dr. Nelson to deny liability. *Daniels v. Finch*, 318 F.Supp. 559 (W.D.Va.1970);[1] *Conn v. Richardson*, 320 F.Supp. 832 (W.D.Va. 1970).[2] This court has recognized the exact problem involved in the current case in a miner's pension case wherein it relied on Dr. Nelson's report. *Church v. Huge*, 500 F.Supp. 133 (W.D.Va.1980). Among coal miners generally, the problem of psychological overlay (somatoform disorder) is common. A coal miner frequently suffers from a minor injury then unrealistically suffers pain, which is clearly not there to the degree imagined. This may or may not be feigned, but we have no other field to turn to other than psychiatry. The mind plays strange tricks on human behavior. As Gertrude Stein once said, "the unreal is more real than the real." If in a person's mind, he suffers pain, then he truly suffers whether or not the cause and justification are there.

To repeat, in this case, Bolling suffers pain; he is convinced he has black lung (and he does have shortness of breath); he believes he has had a heart attack. He was 63 years of age at the time of his hearing. A psychiatrist (Nelson), a clinical psychologist (Leizer) and the ALJ agree that Bolling has a severe impairment. If the court had to decide this case now, it would say the Secretary's decision is not supported by substantial evidence. The court has chosen to give the Secretary another bite at the apple by remand. The court will be glad to certify this case for immediate appeal upon motion.

One final word about Dr. Nelson. He is the only psychiatrist located in the coal-producing region of Virginia: Lee, Wise, Scott, Dickenson, Buchanan and Russell Counties. This explains why he examines so many people in the coal-producing regions. Other psychiatrists whose opinions crop up in these cases are in Kingsport and Bristol, Tennessee and Bluefield, West Virginia outside the coalfields, where road conditions are poor. This region has the highest unemployment in Virginia and the highest incidence of total illiteracy. Is there not reason to believe it also has a high incidence of somatoform disorders or emotional overlay association with minor injury or disease?

Thus, the court reconsiders and overrules the motion for relief from judgment. This case is stricken from the docket.

---

1. In *Daniels*, the court says "Dr. Nelson, the psychiatrist, stated that the claimant was a *suitable candidate for rehabilitation* and felt that it would be helpful from a psychiatric standpoint for him to *engage in some form of light work*."

2. In *Conn*, Dr. David Wayne, a psychiatrist, opined that claimant had a conversion reaction, chronic, severe; while Dr. Nelson and Dr. Hogan (a psychiatrist) agreed that claimant would benefit from treatment and/or occupational training.