MEMORANDUM DECISION
 

 KINSER, United States Magistrate Judge.
 

 Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security (“Commissioner”) denying plaintiffs claim for supplemental security income (“SSI”) benefits under the Social Security Act (“Act”), as amended, 42 U.S.C. §§ 1381
 
 et seq.
 
 Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g). The case is before the undersigned United States Magistrate Judge pursuant to consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).
 

 As reflected by the memoranda and argument submitted by the parties, the issues now before this court are whether the Commissioner’s final decision is supported by substantial evidence, and if it is not, whether plaintiff has met the burden of proof as prescribed by and pursuant to the Act. Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind.
 
 Richardson v. Perales,
 
 402 U.S. 389, 400, 91 S.Ct. 1420, 1426-27, 28 L.Ed.2d 842 (1971).
 

 Plaintiff filed his SSI application in October 1992 and alleged disability since June 1989 due to alcoholism, breathing problems, emphysema, diabetes, a sleeping disorder, and drug addiction. He pursued his administrative appeals and filed this action after the Social Security Administration’s Appeals Council (“Appeals Council”) denied his request for review of the Administrative Law Judge’s (“ALJ”) decision dated September 23,1994.
 
 See
 
 20 C.F.R. § 416.1481. In that opinion, which now stands as the final decision of the Commissioner, the ALJ found that plaintiff cannot return to his prior work but has “the residual functional capacity to perform medium
 
 [1]
 
 work with the following limitations: no more than occasional reaching, handling, fingering, gross manipulation, or fine manipulation with either hand; no work involving exposure to dust, fumes, smoke, chemicals, or noxious gases; and no work requiring better than a ‘limited but satisfactory’ ability to deal with the public; interact with supervisors; deal with work stresses; understand, remember, and carry out complex job instructions; and demonstrate reliability.” (Record (“R.”) at 25-26) (footnote added). In response to a hypothetical question based on this residual functional capacity, a vocational expert (“VE”) identified several jobs in the economy which plaintiff can perform, such as janitor, carpenter’s helper, water treatment plant operator, and store laborer. Thus, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.
 
 See
 
 42 U.S.C. § 1382e(a)(3)(A); 20 C.F.R. § 416.920(f). For reasons stated hereinafter, the court does not find substantial evidence to support this conclusion.
 

 I.
 

 Plaintiff was bom on February 26, 1962, and is therefore a “younger” individual under 20 C.F.R. § 416.963(b). He completed the eleventh grade and previously worked as a construction worker, tree cutter, and asbestos worker. According to the VE, all these jobs required heavy exertion and were unskilled.
 

 Plaintiff acknowledges that alcoholism is the major cause of his alleged disability. Plaintiffs alcohol consumption dates back to his childhood. The first diagnosis of alcoholism in the medical records before the court was in July 1985 when he was admitted involuntarily to Dickenson County Hospital for alcohol detoxification. Over the course of the following nine years, plaintiff was hospitalized on at least fifteen different occasions for detoxification and treatment of his alcohol
 
 *1239
 
 addiction.
 
 [2]
 
 Plaintiff repeatedly failed to comply with treatment plans after leaving the hospital and routinely continued his pattern of drinking and abusive behavior.
 
 [3]
 
 Antabuse
 
 [4]
 
 was prescribed in August 1993, but plaintiff continued to drink and was arrested a few months later. By an order dated November 23,1993, a court required plaintiff to submit to doses of Antabuse twice weekly in the presence of counselors for as long as his counselors believed it necessary. (R. at 398). Thereafter, plaintiff was hospitalized again in June and August 1994 for detoxification.
 

 Because of ■ plaintiffs alcoholism, several governmental agencies referred him for consultative psychological and psychiatric evaluations. Dr. Shelle Dietrich performed a psychological evaluation in August 1993 and diagnosed dysthymia, alcohol dependence, and an adjustment disorder with anxious features. (R. at 247). On the Wechsler Adult Intelligence Scale — Revised (“WAISR”), plaintiff obtained a verbal IQ score of 91, a performance IQ score of 73, and a full scale IQ score of 81. Dr. Dietrich opined that plaintiff is capable of negotiating simple and some even more complex vocational requirements but that he may prefer to work alone or in his own business since he does not accept supervision easily. She recommended referral to a vocational rehabilitation program. (R. at 248). Dr. Dietrich also opined that plaintiffs mental ability to make occupational, performance, and personal/soeial adjustments in a work setting is “limited but satisfactory” in a few areas of functioning and “more than satisfactory” in the majority of areas. (R. at 249-50).
 

 Dr. Russell McKnight, a psychiatrist, also examined plaintiff in August 1993 and diagnosed anxiety depressive syndrome with insomnia and a personality disorder. (R. at 254). Dr. McKnight stated that plaintiff suffers from chronic alcohol and drug abuse which appeared to be in remission at the time of his evaluation. He opined that plaintiff was currently dysfunctional and not suitable for competitive employment, and that it was unlikely that plaintiff would be suitable for work for approximately six months. Dr. McKnight again evaluated plaintiff in February 1994 and diagnosed a general anxiety disorder and panic disorder with psychophysiological reaction-colitis. After the second evaluation,' Dr. McKnight stated that plaintiffs alcoholism was in remission and recommended that plaintiff continue to attend a mental health center and his Antabuse therapy. Dr. McKnight again opined that plaintiff was disabled and was unlikely to be suitable for competitive employment for at least six months. (R. at 289). In May 1994, Dr. R. Kaur performed a psychiatric evaluation of plaintiff and also diagnosed a panic disorder with agoraphobia. (R. at 405).
 

 In addition to his alcohol addiction, plaintiff suffers some respiratory impairment due to his history of heavy smoking. Dr. Happy Smith performed pulmonary function tests in November 1992 which revealed a moderate obstructive lung defect. Approximately one year later, Dr. S.S. Tholpady diagnosed emphysema and prescribed nicotine patches for cigarette addiction. (R. at 381).
 

 II.
 

 Plaintiff admits that if he is disabled under the Act, “alcoholism would be a material
 
 *1240
 
 factor contributing to such a determination.” (Plaintiffs Supplemental Brief at 3). Indeed, alcoholism would probably be the sole cause of disability. Because of this admission, there is a threshold issue which the court must address before deciding whether the Commissioner’s final decision is supported by substantial evidence.
 

 Recent amendments to the Social Security Act may bear directly upon plaintiffs right to SSI benefits. On March 29, 1996, Congress enacted an amendment to the Act which provides that “an individual shall not be Considered to be disabled ... if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner’s determination that the individual is disabled.” Pub.L. 104r-121, § 105(b)(1) (to be codified at 42 U.S.C. § 1382c(a)(3)(I)). The statute specifies its effective date as follows:
 

 The amendments made by paragraphs (1) and (4) shall apply to any individual who applies for, or whose claim is finally adjudicated by the Commissioner of Social Security with respect to, supplemental security income benefits under Title XVI of the Social Security Act based on disability on or after the date of the enactment of this Act, and, in the ease of any individual who has applied for, and whose claim has been finally adjudicated by the Commissioner with respect to, such benefits before such date of enactment, such amendments shall apply only with respect to such benefits for months beginning on or after January 1, 1997.
 

 Pub.L. 104-121, § 105(b)(5)(A). Therefore, an individual whose claim was finally adjudicated favorably prior to March 29, 1996, is eligible to receive SSI benefits only until January 1, 1997. After that date, any entitlement to SSI benefits due to disability based upon alcoholism or drug addiction will end. However, a claimant who applied for benefits after March 29,1996,
 
 or
 
 who applied before March 29, 1996, but whose claim was not finally adjudicated by the Commissioner by that date, would be precluded from obtaining any SSI benefits if alcoholism or drug addiction is a contributing factor to the disability determination. Since the Commissioner asserts that plaintiffs claim falls in the last category, the court’s focus is the interpretation of the phrase “finally adjudicated by the Commissioner.”
 
 [5]
 

 In their supplemental briefs to the court, the parties assert that plaintiffs claim is not yet finally adjudicated since plaintiff appealed the Appeals Council’s denial of review by filing this lawsuit.
 
 [6]
 
 Contrary to the Commissioner’s argument, 20 C.F.R. §§ 416.1455 and 416.1481 state only that the ALJ’s opinion or the Appeals Council’s opinion upon review of the ALJ’s opinion is binding if not further appealed to the courts. Neither regulation says that such an opinion is
 
 not
 
 the final decision of the Commissioner in the event of an appeal to the federal courts. Indeed, under the terms of 42 U.S.C. § 405(g), the federal courts’ jurisdiction to review a claim is limited to “any final decision of the Commissioner of Social Security made after a hearing.”
 
 See Califano v. Sanders,
 
 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). If the Commissioner’s
 
 *1241
 
 argument were accepted on its face, there would never be a final decision of the Commissioner which this court would have jurisdiction to review. By using the phrase “finally adjudicated
 
 by the Commissioner,”
 
 this court believes that Congress specifically limited the amendment’s reach and distinguished between the Commissioner’s final decision and the final adjudication of a claim. If Congress had intended final adjudication by the Commissioner to include federal court review, they could have easily omitted “by the Commissioner.” They, however, did not.
 

 Several sources support this court’s interpretation of the phrase “finally adjudicated by the Commissioner.” First, the Eighth Circuit recently utilized the same interpretation in
 
 Newton v. Chater,
 
 92 F.3d 688 (8th Cir.1996). In
 
 Newton,
 
 the claimant had a history of alcohol abuse, and like the present case, the Appeals Council denied his request for review before March 29, 1996. The court stated, without explanation, the following:
 

 For claims decided by the Commission before March 29,1996 (the enactment date of the amendments), disability benefits beginning on, or after, January 1, 1997 may not be based on alcoholism. The final administrative adjudication of Newton’s claim was made in May 1995, when the Appeals Council denied Newton’s request for review of the ALJ’s decision. If Newton were disabled by alcoholism, his eligibility for benefits on this basis could not extend beyond January 1,1997.
 

 Id.
 
 at 696 n. 3 (citations omitted);
 
 contra Armstrong v. Chater,
 
 No. CIV.95-1709-M, 1996 WL 467310 (W.D.Okla. June 20, 1996). Second, many courts, including the Fourth Circuit, have consistently stated that the final decision of the Commissioner consists of the Appeals Council’s opinion or, if the Appeals Council denies review of or adopts the ALJ’s opinion, the ALJ’s opinion.
 
 Hall v. Chater,
 
 52 F.3d 518, 521 (4th Cir.1995);
 
 Keeton v. Dept. of Health & Human Services,
 
 21 F.3d 1064, 1066 (11th Cir.1994);
 
 Wilkins v. Secretary,
 
 953 F.2d 93, 96 (4th Cir.1991). As stated by the court in
 
 Hall,
 
 “a district court has jurisdiction to review only the [Commissioner’s] final decision, and when ... that is the decision of the Appeals Council, it is to that decision the court must look____”
 
 Hall,
 
 52 F.3d at 521. Finally, 42 U.S.C. § 405(i) specifically distinguishes between a “final decision of the Commissioner” and a “final judgment of any court of competent jurisdiction.”
 

 The Commissioner argues that her interpretation is the only one which gives full effect to other provisions of the amendment. Under the amendment, the Commissioner must notify within 90 days after enactment those claimants whose benefits will end as a result of the amendment. If a claimant reapplies for benefits within 120 days from the date of enactment, the Commissioner must redetermine the claimant’s entitlement to benefits by January 1, 1997. These provisions are intended as a grace period to enable those who will lose their previously awarded benefits to establish that alcohol is not a
 
 contributing
 
 factor. The court’s interpretation of the phrase “finally adjudicated by the Commissioner” does nothing to endanger those protections. For those whose claims were finally adjudicated favorably by the Commissioner before the date of enactment, the amendment’s protections are still in place. Those whose claims were finally adjudicated unfavorably by the Commissioner before March 29, 1996, and who appealed still have the opportunity to litigate in their ongoing claim whether alcohol is a contributing factor to their disability. Moreover, they are not currently receiving benefits upon which they would be dependent. They, therefore, do not need the grace period.
 

 For these reasons, the court concludes that the phrase “finally adjudicated by the Commissioner” means just that: the final decision made at the administrative level with regard to a claim under the Act.
 
 Martin v. Chater,
 
 938 F.Supp. 347 (W.D.Va.1996). In the present case, the Appeals Council denied review of the ALJ’s September 23, 1994, opinion on July 10, 1995. Consequently, the court concludes that plaintiffs claim was finally adjudicated by the Commissioner well before the March 29, 1996, effective date. Therefore, if plaintiff was disabled, even if due only to alcoholism, for at least one year prior to
 
 *1242
 
 March 29, 1996, then he is entitled to SSI benefits under the amendment until January 1,1997.
 
 [7]
 

 III.
 

 Prior to the enactment of the recent amendments to the Act, chronic alcoholism could constitute a disability precluding substantial gainful employment.
 
 King v. Califano,
 
 599 F.2d 597 (4th Cir.1979). <£Where there is evidence of alcohol abuse, the [Commissioner] must inquire whether the claimant is addicted to alcohol and has the ability to control its use.”
 
 Gordon v. Schweiker,
 
 725 F.2d 231, 236 (4th Cir.1984) (citing
 
 Hicks v. Califano,
 
 600 F.2d 1048, 1051 (4th Cir.1979)). “Disability benefits cannot be denied because of a claimant’s continued alcohol abuse if the claimant is unable voluntarily to stop drinking.”
 
 Gordon,
 
 725 F.2d at 236. If the Commissioner finds that the claimant has lost that ability, the next inquiry is whether this loss of control precludes performance of substantial gainful activity.
 
 Adams v. Weinberger,
 
 548 F.2d 239, 242 (8th Cir.1977). Additionally, “if there is evidence that claimant is ... disabled in whole or in part by his use of alcohol, the vocational expert should be asked to take this factor into consideration as well.”
 
 Hicks,
 
 600 F.2d at 1051.
 

 Plaintiff testified at the administrative hearing that his problem with alcohol and drugs began when he was fourteen. (R. at 61). The record contains copies of at least 35 arrest warrants charging plaintiff with “Drunk in Public” between December 1984 and July 1993. (R. at 293-379). In addition, plaintiff was hospitalized for his alcohol problem no fewer than fifteen times from July 1985 through November 1993, at which time a court order mandated that plaintiff undergo Antabuse therapy for as long as his counselors believed it to be necessary. (R. at 398).
 
 [8]
 
 Despite the Antabuse, plaintiff was again hospitalized in both June 1994 and August 1994 subsequent to his administrative hearing. Furthermore, plaintiff was once again arrested in August 1994 on a charge of “Drunk in Public” and in September 1994 for Driving Under the Influence.
 

 Although the ALJ is correct in his assertion that the frequency of plaintiff’s detoxification treatments decreased after plaintiff applied for SSI, the court surmises that plaintiff’s Antabuse therapy, initiated and enforced by a court of law, played a large role in this, decrease. The fact remains, however, that plaintiff again underwent detoxification and was arrested on alcohol-related charges while under court order to participate in Antabuse therapy. Such conduct is not indicative of one in control of alcohol consumption. Contrary to the ALJ’s assertion, the Antabuse did not eliminate the problem. At the very least, the need to resort to Antabuse therapy emphasizes the seriousness of plaintiffs addiction to alcohol.
 

 The court notes, as did the ALJ, that plaintiff recounted basically the same history to both Dr. Dietrich and Dr. McKnight in August 1993. (R. at 20). However, the conclusions reached by each of these examiners regarding plaintiffs ability to function in a work setting differ dramatically. In his most recent report, Dr. McKnight noted plaintiffs chronic alcoholism and diagnosed a general anxiety disorder as well as panic disorder.
 
 [9]
 
 Dr. McKnight concluded that plaintiffs condition precluded him from participating in any actively competitive work environment at that time. Considering plaintiff’s subsequent hospitalizations and arrests for alcohol-related offenses, the court is inclined to agree. The administrative record also clearly documents that plaintiff had been arrested many times previously and had left each of his past jobs due to his intoxicated status.
 

 
 *1243
 
 Furthermore, the court finds that the ALJ’s reliance on the report of Dr. Dietrich is misplaced because Dr. Dietrich’s mental assessment findings flatly contradict her own diagnoses. In her report, Dr. Dietrich diagnosed dysthymia, alcohol dependence, and adjustment disorder with anxious features. (R. at 247). Each of these conditions typically results in clinically significant distress or impairment in social or occupational functioning.
 
 Diagnostic and Statistical Manual of Mental Disorders
 
 (“DSM-IV”) 181, 349, 626 (Michael B. First, M.D. ed., 4th ed. 1994). In addition, the DSM-IV explains that substance dependence constitutes a more serious pattern of substance use and side-effects than does substance abuse.
 
 Id.
 
 at 181-183. Despite these diagnoses, Dr. Dietrich indicated in her mental assessment that plaintiff has at least a “more than satisfactory” ability to make occupational, performance, and personal/soeial adjustments in all but five areas of functioning.
 
 [10]
 
 (R. at 249-50). In the face of such contradictions, an expert witness’s opinion should be disregarded.
 
 See Bolling v. Bowen,
 
 682 F.Supp. 864 (W.D.Va.1988).
 

 The contradictions in this case are not limited to Dr. Dietrich’s findings. While acknowledging plaintiff’s alcohol-related criminal record and the string of jobs he lost due to his drinking, the ALJ indicated on the Psychiatric Review Technique Form that plaintiff suffers no restrictions in his activities of daily living; only slight difficulties in maintaining social functioning; seldom has deficiencies of concentration, persistence, or pace which result in a failure to complete tasks in a timely manner; and never has experienced episodes of deterioration or decompensation in a work setting. (R. at 31). Based upon the volumes of evidence within the administrative record, the court must conclude that these findings of the ALJ are most definitely not supported by substantial evidence.
 

 In short, the entirety of the evidence directs a finding that plaintiff suffers from uncontrollable alcoholism. Plaintiff has met his burden in establishing his inability to perform any substantial gainful activity due to his drinking.
 
 [11]
 
 Due to the fact that a remand for the consideration of additional evidence could serve no purpose given the extensive documentation of plaintiffs problem already contained within the administrative record and plaintiffs admission that alcoholism is essentially the sole cause of his disability, the court further finds that plaintiffs alcoholism is “a contributing factor material” to the determination of his disability. Pub.L. 104-121, § 105(b)(1).
 

 rv.
 

 For these reasons, the court finds that the Commissioner’s final decision is not supported by substantial evidence. The Commissioner’s motion for summary judgment must therefore be denied. Upon finding that plaintiff has met the burden of proof as prescribed by and pursuant to the Act in establishing disability, because of alcoholism, for all forms of substantial, gainful employment, judgment will be entered in favor of plaintiff. The Commissioner’s final decision denying supplemental security income benefits will be reversed
 
 [12]
 
 to the extent that the denial was based on the finding that plaintiff is not disabled. However, since the Commis
 
 *1244
 
 sioner has not considered whether plaintiff meets the financial eligibility requirements for SSI, the court must remand the case to the Commissioner for an appropriate determination.
 
 [13]
 
 An appropriate judgment and order will be entered this day.
 

 [1]
 

 . “Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.” 20 C.F.R. § 416.967(c).
 

 [2]
 

 . Almost all of these hospitalizations were involuntary and the products of detention orders. From 1984 through 1992, law enforcement officials arrested plaintiff approximately 40 times on charges including resisting arrest, brandishing and discharging a firearm, assault and battery, and violating the terms and conditions of a Community Diversion Incentive program. More than thirty-five of his arrests were for being drunk in public, the most recent of which occurred in August 1994.
 

 [3]
 

 . On-call reports from Dickenson County Community Services from 1988 through 1992 reveal that plaintiff was physically and verbally abusive toward family members and that he continued to abuse drags and alcohol. In addition, plaintiff threatened to commit suicide on several occasions.
 

 [4]
 

 . Antabuse "produces a sensitivity to alcohol which results in a highly unpleasant reaction when the patient under treatment ingests even small amounts of alcohol ... [and is used as] an aid in the management of selected chronic alcoholic patients who
 
 want
 
 to remain in a state of enforced sobriety so that supportive and psycho-therapeutic treatment may be applied to best advantage.”
 
 Physicians’ Desk Reference,
 
 2695 (50th ed.1996).
 

 [5]
 

 . In interpreting the amendment's clause regarding the effective date, the court considered the possibility that "on or after the date of the enactment” actually modifies "disability,”’ rather than “who applies for, or whose claim is finally adjudicated,” due to the positioning of these phrases within the amendment's text as well as the fact that the concept of the onset date is a critical element in making disability determinations. If this were the case, then only those claimants whose disability actually begins after March 29, 1996, would receive no benefits. The practical effect of this alternative interpretation would be to allow claimants who file for disability insurance benefits ("DIB”) after the date of enactment but allege onset before enactment to be eligible for a closed period of benefits. The result would not be the same for SSI claimants because they cannot receive benefits for any period before their date of application. 20 C.F.R. § 416.335. The court rejected this alternative interpretation because a claimant who applies for benefits after the date of enactment does so under a new law and should therefore not be entitled to any benefits arising from a disability which the law no longer recognizes.
 

 [6]
 

 . Although plaintiff also raised issues including retroactive application of the amendment and equal protection concerns, it is unnecessary for the court to address those issues in this particular case.
 

 [7]
 

 . A claimant must prove that disability due to alcoholism or drug abuse existed for the twelve month period prior to the amendment's effective date. This proof is necessary because alcoholism and drug abuse are no longer bases for disability as of March 29, 1996, and the Act requires that an impairment last or be expected to last a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 416.905(a) and 416.909.
 

 [8]
 

 . Plaintiff testified at his administrative hearing that his case manager recommended that he continue the Antabuse therapy for at least five years. (R. at .75):
 

 [9]
 

 . This finding is supported by Dr. Kaur's report from several months later which diagnosed a panic disorder as well.
 

 [10]
 

 .
 
 Dr.
 
 Dietrich rated plaintiff's ability in
 
 those
 
 five areas as “limited but satisfactory.”
 

 [11]
 

 . Plaintiff's counsel posed the following hypothetical to the VE at the administrative hearing: “[Plaintiff] was capable of performing a wide range of medium work and his hands were not particularly dexterous; and that he also had a breathing problem; and psychologically
 
 his
 
 abilities were seriously limited but not precluded in the areas of dealing with the public, dealing with supervisors and co-workers, dealing with work
 
 stresses, performing
 
 complex instructions, and ... reliability.” (R. at 80). The VE responded that such a change in psychological limitations would eliminate the jobs he listed in response to the AO’s hypothetical. (R. at 81). The court notes that each of the psychological areas listed in this hypothetical were listed as "limited but satisfactory" in the AO's hypothetical based upon Dr. Dietrich’s mental assessment.
 

 [12]
 

 . "The statute governing review in Social Security cases authorizes [the court] to reverse the [Commissioner's] decision ‘with or without remanding the cause for a rehearing.' ”
 
 Breeden v. Weinberger,
 
 493 F.2d 1002, 1011 (4th Cir.1974) (quoting 42 U.S.C. § 405(g)).
 
 See
 
 42 U.S.C. § 1383(c)(3);
 
 Taylor v. Weinberger,
 
 512 F.2d 664 (4th Cir.1975);
 
 Thomas
 
 v.
 
 Celebrezze,
 
 331 F.2d 541 (4th Cir.1964);
 
 Collins v. Califano,
 
 440 F.Supp. 457 (W.D.Va. 1977).
 

 [13]
 

 . If plaintiff satisfies the financial criteria, he would be entitled to SSI benefits only until January 1, 1997, because of the recent amendments to the Social Security Act and the fact that alcoholism is a contributing factor material to his disability.