Phineas E. MILLER,[1] Plaintiff,

v.

Shirley S. CHATER,[2] Commissioner of Social Security, Defendant.

No. 5:94CV1745.

United States District Court, N.D. Ohio, Eastern Division.

Nov. 8, 1995.

1. Counsel for plaintiff filed a Notice of Suggestion of Death on September 13, 1995, requesting that Mr. Miller's widow, Emma Miller, be substituted as plaintiff in this action to receive whatever benefits might be due her husband. There being no objection from the defendant, the court granted the motion on October 6, 1995.

2. The functions of the Secretary of Health and Human Services in Social Security cases were transferred to the Commissioner of Social Security effective March 31, 1995. Pursuant to Fed. R.Civ.P. 25(d)(1), Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Despite this substitution of the parties in the caption, the court refers to the Secretary in the text as she was the appropriate party at the time of the underlying decision.

Dianne R. Newman, Sternberg, Newman & Associates, Akron, OH, for plaintiff.

Kent W. Penhallurick, Office Of The U.S. Attorney, Cleveland, OH, for defendant.

## MEMORANDUM OPINION AND ORDER

HEMANN, United States Magistrate Judge.

This matter is before the court on consent of the parties. The action, filed pursuant to 42 U.S.C. § 405(g), challenges the final decision of the Secretary of Health and Human Services ("Secretary") denying plaintiff Phineas E. Miller's ("Miller") application for social security retirement benefits. Because the Secretary correctly applied the applicable law, the decision of the Secretary is affirmed.

### I.

Miller filed his application for retirement insurance benefits on December 21, 1991 seeking benefits as of May 1991. Emma Miller applied for spouse's benefits on the same date. Miller's claim was denied initially and on reconsideration. Miller requested a hearing before an administrative law judge ("ALJ"); the hearing was held on August 2, 1993. On September 15, 1993 the ALJ denied the request for benefits. When the Appeals Council denied Miller's request for review, the ALJ's decision became that of the Secretary.

### II.

On March 5, 1966 Miller filed an "Application For Exemption From Tax On Self–Employment Income, Claim For Refund, and Waiver of Benefits" (Form 4029) with the Internal Revenue Service pursuant to 26 U.S.C. § 1402(g) ("§ 1402(g)"). Miller certified that he had been a member of the Amish Mennonite Christian Fellowship in New Baltimore, Ohio since 1931 and, as such, was "conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act)." Through the application Miller requested exemption from payment of taxes on self-employment earnings and agreed as follows:

I hereby waive any and all rights to any type of social security payment or benefit under Titles II and XVIII of the Social Security Act and understand and agree that no benefits or other payments of any kind under Titles II and XVIII of the Social Security Act shall be payable on the basis of my wages or self-employment income, or both, to any other person.

Miller further agreed to notify the District Director of Internal Revenue within 60 days of the occurrence of any event which resulted in his no longer being a member of, or adhering to the tenets of, the Amish Mennonite Church. Miller attached a tax schedule to the Exemption form which reported that he had self-employment income from farming for the years 1955–1964.

Miller's application was approved on August 10, 1970 by the IRS. As a result, he received a refund of self-employment taxes paid through that date as well as a prospective waiver of payment.

During the years 1962–1987 Miller also worked for various employers. He and his employers paid FICA taxes on the wages earned from that employment.[3] There is no evidence that Miller ever contributed to social security on his self-employment earnings. He claimed an exemption on self-employment earnings as late as 1989.

Miller states in his brief that he left the Amish Mennonite Church and stopped farming. He argues that his waiver thus was "invalidated." Miller did not testify to having left the church. During his hearing he

---

**3.** Until December 31, 1988 employers who were members of a religious sect described in § 1402(g) were required to pay FICA taxes, and make deductions, on the earnings of their employees. After that date, pursuant to 26 U.S.C. § 3127, such employers were exempt from making contributions on the wages of employees with a § 1402(g) exemption. This "employer" exemption is not claimed by Miller; moreover, the evidence is that his wages ceased after the first quarter of 1987, prior to the effective date of the statute.

was asked to stand and be sworn. He responded, "I don't swear." He agreed to affirm, stating, "We're not in the church anymore [sic] what it was at that time but that's...." Miller never filed written notice with the IRS to trigger withdrawal of the exemption.

### III.

Section 1402(g), Members of certain religious faiths, states, in relevant part:

(1) **Exemption.**—Any individual may file an application (in such form and manner, and with such official, as may be prescribed by regulations under this chapter) for an exemption from the tax imposed by this chapter if he is a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act). **Such exemption may be granted only if the application contains or is accompanied by—**

(A) such evidence of such individual's membership in, and adherence to the tenets or teachings of, the sect or division thereof as the Secretary may require for purposes of determining such individual's compliance with the preceding sentence, and

(B) **his waiver of all benefits and other payments under titles II and XVIII of the Social Security Act on the basis of his wages and self-employment income as well as all such benefits and other payments to him on the basis of the wages and self-employment income of any other person,**

and only if the Secretary of Health and Human Services finds that—

(C) such sect or division thereof has the established tenets or teachings referred to in the preceding sentence,

(D) it is the practice, and has been for a period of time which he deems to be substantial, for members of such sect or division thereof to make provision for their dependent members which in his judgment is reasonable in view of their general level of living, and

(E) such sect or division thereof has been in existence at all times since December 31, 1950.

(Emphasis added.) Title 42 § 402(v) ("§ 402(v)") reads, in relevant part:

(1) [I]n the case of any individual who files a waiver pursuant to section 1402(g) of Title 26 and is granted a tax exemption thereunder, **no benefits or other payments shall be payable under this subchapter to him,** no payments shall be made on his behalf under part A of subchapter XVIII of this chapter, and no benefits or other payments under this subchapter shall be payable on the basis of his wages and self-employment income to any other person, after the filing of such waiver.

\*    \*    \*    \*    \*    \*

(3) If, after an exemption referred to in paragraph (1) ... is granted to an individual, such exemption ceases to be effective, the waiver referred to in such paragraph shall cease to be applicable in the case of benefits and other payments under this subchapter and part A of subchapter XVIII of this chapter to the extent based on—

(A) his wages for and after the calendar year following the calendar year in which occurs the failure to meet the requirements of section 1402(g) ... on which the cessation of such exemption is based....

(Emphasis added.)

In *United States v. Lee,* 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d .127 (1982), the Supreme Court faced the issue of whether the requirement that Amish employers pay social security taxes on their employees violated the Establishment Clause. The Court noted the exemption accorded self-employed individuals through § 1402(g) and found the narrow exemption to be rationally related to

orderly administration of the national program:

> Congress has accommodated, to the extent compatible with a comprehensive national program, the practices of those who believe a violation of their faith to participate in the social security system. In § 1402(g) Congress granted an exemption, on religious grounds, to self-employed Amish and others. Confining the § 1402(g) exemption to the self-employed provided for a narrow category which was readily identifiable. Self-employed persons in a religious community having its own "welfare" system are distinguishable from the generality of wage earners employed by others.

*Id.* at 260–61, 102 S.Ct. at 1057 (footnotes omitted). The Court concluded, "The tax imposed on employers to support the social security system must be uniformly applicable to all, except as Congress provides explicitly otherwise." *Id.* at 261, 102 S.Ct. at 1057 (footnotes omitted).

In sum, the governing statutes and case law 1) acknowledge the legitimacy of Congress' decision to exempt self-employed individuals of certain religious sects from payment of FICA taxes on their earnings, 2) require that in invoking the waiver the self-employed individual waive any and all entitlement to benefits as a result of wages or self-employed earnings, 3) permit for a recision of the waiver of payments under certain circumstance, including an individual's disavowment of the tenets of the religious sect, and 4) permit Congress to draw a line in granting the exemption in order to preserve the uniformity of the system.

Plaintiff argues, "While it was the Free Exercise Clause of the Constitution that provided the basis for the exemption of obligation and correlative waiver of benefits for the Old Order Amish, it is a denial of the Equal Protection Clause if the right to revoke is not guaranteed." Plaintiff's Brief at 5–6. In fact, the "right to revoke" is guaranteed by § 402(v)(3) and the application for exemption completed by Miller. Miller simply did not invoke that right. He never gave the IRS any notice that he was leaving the Amish Mennonite Church and as late as 1989, two years after he received his last reported wages, invoked the exemption as to his self-employed income.

Miller also argues that when he left the church and the "safety net" provided to its members, the waiver of the exemption should have been automatic. First, there is no evidence in the record that Miller left the church. Second, Miller agreed, when applying for the exemption, to give notice of changed circumstances to the IRS. He did not give any such notice and continued, instead, to invoke the exemption as late as 1989. Finally, there is the issue of fairness which was raised during the administrative hearing. Is it fair to deny benefits to Miller based on his waiver when he paid in the requisite number of quarters from his wages? The answer, based upon *Lee,* must be yes. Miller was given an exemption from paying taxes on his self-employment income from 1951 to 1989.[4] He signed a written agreement to forego benefits based upon wages as well as self-employment income. He did not notify the IRS that he was no longer a member of the Amish Mennonite Church and thus no longer entitled to the exemption. The government kept its part of the agreement, and Miller must keep his.

## IV.

For the above stated reasons, the decision of the Secretary is affirmed.

IT IS SO ORDERED.

4. Pursuant to § 402(v)(3)(A), if Miller had revoked his waiver, he could have begun accumulating quarters toward earning of benefits. He could not have counted the quarters earned while he was invoking the exemption. Thus he could have applied only wages and self-employment income earned after 1989, the year for which he last sought exemption. There is no record of earnings after 1989.