**Owen M. YODER, Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner, Social Security Administration, Defendant–Appellee.**

No. 02–2782.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 17, 2002.

Decided Jan. 16, 2003.

Before BAUER, CUDAHY, and COFFEY, Circuit Judges.

**ORDER**

Over twenty years ago, the Internal Revenue Service (IRS) granted Owen Yoder a tax exemption under 26 U.S.C. § 1402(g), which excused him from paying

self-employment tax based on religious grounds but also waived his right to Social Security retirement benefits. Yoder argues that his application for this exemption should never have been approved because it was untimely under the statute's filing deadline, and thus his waiver of benefits was void and does not make him ineligible for benefits now. The district court rejected Yoder's argument, and because the Social Security Administration (SSA) had no authority to review the exemption and adhered to the appropriate statutes and regulations in denying Yoder benefits, we affirm.

Yoder worked in Social Security covered employment from 1950 to 1975, in 1977, and from 1986 to 1989. Yoder also had income from self-employment beginning in 1973, when he became a member of the Bethel Conservative Mennonite Church. As a member of the Church, Yoder was conscientiously opposed to Social Security benefits and consequently filed with the IRS in 1981 an application for an exemption from paying self-employment tax. As part of this application, Yoder agreed to waive all Social Security benefits. Yoder also stated on the application that he first became subject to self-employment tax in 1974. The IRS approved his application in 1981 and granted him the exemption to cover all years thereafter. Yoder contends, without much explanation, that a "post-it" note, addressed to the IRS from the SSA and referencing procedure "ADP 329–729," on his original application for the exemption evidences that the SSA was aware that the application was untimely because he did not apply for the exemption before the filing deadline for the first tax year in which he earned self-employment income. The record does not disclose–and the parties do not tell us–what procedure this note references or whether it was followed.

After the IRS granted Yoder the exemption, he never again paid taxes on self-employment income. In 1995 the SSA sent Yoder a statement projecting his accrued benefits, albeit mistakenly as the SSA asserts. After he turned 65 in 1999, Yoder applied for benefits with the SSA. In May 2000 Yoder also notified the IRS by filing a revocation form that he was no longer a member of the Mennonite Church and wanted to revoke his tax exemption. Although he had not filled out the proper form, the IRS approved the revocation.

The SSA denied Yoder's claim for benefits at the initial and reconsideration levels because he had been exempted from self-employment tax and had correspondingly waived his right to Social Security benefits. An Administrative Law Judge (ALJ) decided, however, that Yoder had accumulated sufficient quarters of Social Security covered employment before the exemption had been granted to qualify for benefits. The SSA's Appeals Council, on its own motion, reviewed the ALJ's decision and reversed, concluding that because Yoder had previously waived his benefits, the only quarters that would count toward coverage were those accumulated after his revocation had been approved. Since Yoder had not reported any income since 1989, it found that he was not eligible for benefits. Yoder then filed a complaint in district court against the SSA, but the court concluded on summary judgment that Yoder had made use of the exemption without notifying the IRS of its purported mistake and that the SSA had followed the proper statutes and regulations in denying Yoder benefits given that the exemption and waiver had been in place. Yoder timely appealed, and because he does not challenge any findings of fact, but rather argues that the Appeals Council and the district court erred as a matter of law, we review the grant of summary judgment *de novo*. *O'Kane v. Apfel,* 224 F.3d 686, 688 (7th Cir.2000).

On appeal Yoder does not pursue the argument that he had accumulated sufficient quarters of coverage before the exemption and corresponding waiver took effect to qualify for benefits. Rather, he argues that neither the IRS nor the SSA had the authority to grant the exemption or accept his waiver in the first place because his application was untimely. In 1981 when Yoder filed for the exemption, 42 U.S.C. § 1402(g)(2) (Yoder incorrectly asserts that he filed under the former 42 U.S.C. § 1402(h)) provided that an applicant must file for the exemption "on or before the time prescribed for filing the return ... for the first taxable year for which the individual has self-employment income." Because Yoder first earned self-employment income in 1973, he claims that his filing deadline should have been April 15, 1974, but he did not file for the exemption until 1981. Yoder argues that because his untimely application should never have been approved, the corresponding waiver was never effective, and that because the SSA knew of the mistake, they should not have denied him benefits based upon the waiver. The SSA responds that Yoder is addressing the wrong agency because it "has no authority or jurisdiction to review or approve applications for tax exemptions filed with the IRS," and that the requisite statutes and regulations commanded that it deny Yoder benefits given that the exemption and waiver had been in effect.

The record does not disclose why the IRS approved Yoder's application if indeed it was untimely. And the parties do not discuss whether the filing deadline was a waivable condition. It may be possible, as the SSA notes, that Yoder fell under an exception to the filing deadline in 42 U.S.C. § 1402(g)(2):

> Time for filing application ... except that an application filed after such date but on or before the last day of the third calender month following the calender month in which the taxpayer is first notified in writing by the Secretary that a timely application for an exemption from the tax imposed by this chapter has not been filed by him shall be deemed to be filed timely.

Again the record is silent as to whether the IRS ever sent Yoder such a notice.

We need not discover why the IRS granted Yoder's application to resolve this appeal, however. The IRS was the agency responsible for approving the exemption; 26 C.F.R. § 1.1402(h)–1(e) is clear that an applicant does not get the exemption until the IRS approves it. Even the internal processing instructions for SSA employees (POMS), on which Yoder places particular emphasis, confirm that the IRS oversees the exemption. See POMS RS 01802.272B ("The IRS determines whether or not an individual qualifies for an exemption."); POMS RS 01802.273 ("IRS approves or disapproves the request and notifies the individual and SSA."). Additionally, Yoder filed with the IRS, not the SSA, to revoke his exemption and waiver. Given this background, Yoder's argument fails because he has not pointed to any legal authority, nor could we find any, supporting the contention that the SSA has the duty, or even the ability, to review tax exemptions overseen and granted by the IRS, even if the SSA knew of the original mistake, as Yoder contends. Consequently, when the SSA considered Yoder's application for benefits, it was bound by the exemption and waiver.

The SSA thereafter followed the proper statutes and regulations with respect to Yoder's claim. As Yoder himself stresses, an agency must follow statutory authority and its own regulations. See Dugan v. Sullivan, 957 F.2d 1384, 1388 (7th Cir. 1992). Title 42, United States Code, section 402(v), and 20 C.F.R. § 404.1075(e) mandate that if an individual has previous-

ly waived Social Security benefits but later revokes that waiver, just as Yoder has done, the individual can accrue quarters of Social Security coverage only from that point onward. This scheme makes sense particularly because upon receiving the exemption Yoder was entitled to a refund of all previously paid self-employment tax. *See* 26 C.F.R. § 1.1402(h)–1(g). Thus, the SSA is not allowed to pay benefits based on any income that Yoder had before revoking his exemption and waiver. Since Yoder did not report any income after revoking his exemption and waiver, he has not accrued any coverage that would qualify him for Social Security benefits. Thus, the SSA's denial of benefits was proper.

Finally, we note that Yoder conceded at oral argument that if we were to hold for him, he "may be getting it both ways." Such a result would be inequitable. Yoder made a knowing waiver of his Social Security benefits in return for a tax exemption. *See Blakely v. C.I.R.*, 720 F.2d 411, 414 (5th Cir.1983) (upholding waiver into Social Security system where individual knowingly made, but later challenged, the application). For over twenty years, Yoder did not pay self-employment tax and did not notify the IRS nor the SSA about the "mistake" in granting his application. "The government kept its part of the agreement, and [the applicant] must keep his." *Miller v. Chater*, 908 F.Supp. 479, 482 (N.D.Ohio 1995) (denying Social Security benefits for individual who failed to withdraw his exemption and waiver after no longer qualifying for the exemption).

AFFIRMED.