**Renee TEITELBAUM**

v.

**Shirley S. CHATER, Commissioner of the Social Security Admin.**

**Civil Action No. 95–7346.**

United States District Court, E.D. Pennsylvania.

Dec. 17, 1996.

Eric J. Fischer, Fischer & Walkenhorst, Jenkintown, PA, for Plaintiff.

Charlotte J. Hardnett, U.S. Dept. of Health and Human Services, Office of Gen. Counsel, Region III, James A. Winn, U.S. Attorney's Office, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

YOHN, District Judge.

In this appeal from the final decision of the Social Security Administration denying plaintiff's request for disability insurance benefits under Title II of the Social Security Act, the court is called upon to interpret the meaning of new legislation; the Senior Citizen's Right to Work Act of 1996, Pub.L. No. 104–121, 110 Stat. 847–57 (1996) ("Right to Work Act"), which eliminates the right to receive disability benefits based on alcoholism and drug addiction. The question in this case is the extent to which Congress intended the Act to apply to actions such as the present one, where the alleged disability occurred, and the Commissioner has made a final determination that the plaintiff is not entitled to benefits, prior to the effective date of this Act, but the plaintiff has appealed that decision to the judiciary. In a report and recommendation, the Magistrate Judge assigned to this case concluded that the Act applies retroactively to this case and therefore recommended that this court grant summary judgment in favor of the Commissioner. Because this court does not believe that the Right to Work Act was intended to bar recovery of disability benefits for disability occurring prior to March 29, 1996, the effective date of the Act, the court will decline to adopt the Magistrate Judge's recommendation, and remand the case for further proceedings.

## BACKGROUND

On July 26, 1991, Renee Teitelbaum filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), alleging that she was unable to work because of a disabling drug dependency with an onset date of December 31, 1986. Teitelbaum's application for DIB was denied initially and upon reconsideration.[1] The Administrative Law Judge con-

---

1. The Administrative Law Judge did determine that Teitelbaum was eligible for supplemental

cluded that Teitelbaum had not established any disability prior to the date she was last insured, and was thus ineligible for DIB benefits. *See* 42 U.S.C. §§ 423(a)(1)(A) & 423(c)(1)(B); 20 C.F.R. § 404.131(b) (1995); *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir.1990). Plaintiff's request for review by the Appeals Council was denied on September 26, 1995, and the Administrative Law Judge's decision thus became the final decision of the Commissioner.

Teitelbaum sought judicial review of the final administrative decision to deny benefits pursuant to 42 U.S.C. § 405(g) by filing a complaint on November 22, 1995. The parties filed cross motions for summary judgment, and this court referred the matter to a Magistrate Judge for a report and recommendation. Finding that the Right to Work Act barred plaintiff's request for relief and applied retroactively under the facts of this case, the Magistrate Judge recommended to this court that it grant the Commissioner's motion for summary judgment.

## DISCUSSION

The basis upon which the Magistrate Judge rested his recommendation to grant the Commissioner's motion for summary judgment was that recent amendments to the Social Security Act make it impossible for the plaintiff to recover the benefits she seeks. The natural starting point, therefore, is the text of these amendments.

Section 105(a)(1)(C) of the Right to Work Act provides, in relevant part, that:

An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

Pub.L. No. 104–121, § 105(a)(1)(C), 110 Stat. 847, 852 (1996) (amending 42 U.S.C. § 423(d)(2)). The plaintiff does not appear to dispute the fact that "alcoholism or drug addiction would ... be a contributing factor

security income ("SSI") benefits under Title XVI of the Act based on her drug and alcohol

material to the Commissioner's determination that [she] is disabled."

Rather, the key dispute in this case is whether these amendments apply to the plaintiff's case. The effective date of this act is March 29, 1996. The effective date provision of the statute provides, in relevant part:

The amendments ... apply to any individual who applies for, or whose claim is finally adjudicated by the Commissioner of Social Security with respect to, benefits under title II of the Social Security Act based on disability on or after the date of the enactment of this Act, and, in the case of any individual who has applied for, and whose claim has been finally adjudicated by the Commissioner with respect to, such benefits before such date of enactment, such amendments shall apply only with respect to such benefits for months beginning on or after January 1, 1997.

§ 105(a)(5)(A), 110 Stat. at 853.

This cryptic language has spawned considerable debate and disagreement among the few courts to have considered the application of the statute. There appear to be two plausible interpretations of this statutory language. The first approach would apply the alcoholism and drug addiction provision to all claimants who receive *adjudication* after the effective date of the amendments, regardless of the months for which they seek disability payments, by reading the words "on or after the date of the enactment of this Act" as modifying "applied for" and "finally adjudicated with respect to." The court will refer to this approach as the "adjudication interpretation." The second approach would apply the provision to claims for *disability* which accrue after the effective date of the amendments by reading the words "on or after the date of the enactment of this Act" in the first clause of the statute as modifying "disability." The court will refer to this approach as the "disability interpretation." The court believes that the "disability interpretation" is the interpretation intended by Congress.

disability.

I. If the Court Finds the Commissioner's Decision Was Not Supported by Substantial Evidence, Plaintiff May Recover Benefits for Months Prior to March 1996

A. *The "Adjudication Interpretation" of the Statute*

Under the adjudication interpretation, the statute is read as applying to any individual "whose claim is finally adjudicated ... on or after the date of the enactment" of the amendments. Thus, the statute would divide all claimants, regardless of the dates upon which their claims for disability rest, into two groups: those who have received a final adjudication by the Commissioner before March 29, 1996, and those who have not received a final adjudication before March 29, 1996. The new amendments would apply to the latter, who would be entitled to no benefits whatsoever; including benefits based on periods of disability occurring before March 29, 1996. The former group would be entitled to receive benefits only until January 1, 1997. Most courts which have interpreted the new statute have followed this approach, *see Santos v. Chater*, 942 F.Supp. 57, 63 (D.Mass. 1996) ("the statute divides persons suffering from alcohol or drug addiction into two groups"); *Willis v. Chater*, 939 F.Supp. 1236, 1239–42 (W.D.Va.1996); *Sousa v. Chater*, 945 F.Supp. 1312, 1328–30 (E.D.Cal.1996); *Armstrong v. Chater*, 949 F.Supp. 808, 810 (W.D.Okl.1996) ("In setting differing dates as to when the Amendments are to be effective, Congress distinguished between two groups of individuals....").

Under this reading of the statute, the crucial issue in determining whether the plaintiff may receive any disability benefits for alcoholism or drug addiction focuses on the date the plaintiff received a final adjudication. In this case, therefore, the question would be when plaintiff's case is "finally adjudicated" if the Commissioner makes a final decision before March 29, 1996 denying benefits, the plaintiff seeks judicial review and is successful, but no final judicial decision is made before March 29, 1996.

Of the courts which have followed the adjudication interpretation of the statute, some

courts have found the Commissioner's decision is not final if that decision is appealed to the judicial system and thus denied relief for all disability benefits based on alcoholism or drug addiction. *See Armstrong*, 949 F.Supp. at 810 ("This court concludes that the construction most consistent with the congressional intent embodied in the Amendments is that in referring to 'any individual ... whose claim is finally adjudicated by the Commissioner of Social Security with respect to [disability] benefits ... on or after the date of enactment' ... Congress included not only those individuals with denied claims pending at the various administrative levels of review but also those, such as the Plaintiff here, with denied claims pending appeal in the Federal Courts."); *Sousa*, 945 F.Supp. at 1328–30. Other courts have concluded that "'finally adjudicated by the Commissioner' means 'finally adjudicated by the *Commissioner*'" *Santos*, 942 F.Supp. at 64 (emphasis added), and that when the Commissioner makes a final determination, that is the date to use for purposes of the statute, and the pendency of subsequent judicial proceedings will not affect the plaintiff's right to benefits. *See id.; Willis*, 939 F.Supp. at 1239–42; *cf. Martin v. Chater*, 938 F.Supp. 347, 349 (W.D.Va.1996).

There are, however, several serious problems with the adjudication interpretation which lead this court to conclude that it is not the interpretation intended by Congress.

1. The "Adjudication Interpretation" Leads to Arbitrary and Unfair Results

█ First it is important to remember that these courts interpret the statute as barring all claims for disability based on alcoholism and drug addiction, including claims which may have accrued before the effective date of the legislation. Using the date the Commissioner (or a court) renders a final decision about whether an erroneous decision has been made as to past or present disability benefits appears to be arbitrary and unfair. *Cf. Santos*, 942 F.Supp. at 64 ("The fact that the review process ran past March 1996 should not deprive plaintiff of benefits that a timely, correct decision would

have given him."). This unfairness is best illustrated by the following example.

Suppose Jones and Smith both filed an application for disability benefits based on drug addictions for the same period of time—June 1, 1990 through June 1, 1994—on the same date. Both received an unfavorable decision regarding their claims at the initial stage of review. Both appealed the initial decision to the Commissioner and had cases pending before the Commissioner in March 1996. On March 27, 1996 the Commissioner issued a favorable ruling to Jones. He would be entitled to recover benefits for the 1990–1994 period. On March 30, 1996 the Commissioner issued a favorable ruling to Smith. Under the adjudication interpretation, Jones is entitled to benefits and Smith is entitled to nothing. It seems odd that Congress would have intended such an arbitrary disparity in result, especially considering that several years of back payments might be at stake.

### 2. The Claimant Approach Would Yield a Retroactive Effect

"[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Products,* 511 U.S. 244, 265, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994) (quoting *Kaiser Aluminum & Chem. Corp v. Bonjorno,* 494 U.S. 827, 855, 110 S.Ct. 1570, 1586, 108 L.Ed.2d 842 (Scalia, J., concurring)). Thus, "congressional enactments and administrative rules will not be construed to have a retroactive effect unless their language requires this result." *Id.* at 264, 114 S.Ct. at 1496 (quoting *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988)).

In *Landgraf* the Supreme Court was faced with a sexual discrimination case in which the allegedly discriminatory events had occurred and the plaintiff had filed suit before Congress enacted certain amendments to the civil rights laws. *See Landgraf,* 511 U.S. at 247–48, 114 S.Ct. at 1488. These subsequent amendments permitted compensatory damages and jury trials. *See id.* The plaintiff sought to apply the compensatory damage and jury trial elements of the new amendments to her case. *See id.* In refusing to apply these provisions retroactively, the court first noted the inherent tension between the principle that a court is to apply the law in effect at the time it renders its decision and the axiom that retroactivity is not favored in the law. *See id.* at 264–65, 114 S.Ct. at 1496. That tension was to be resolved under the following formula:

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at 280, 114 S.Ct. at 1505; *accord Scheidemann v. INS,* 83 F.3d 1517, 1521 (3d Cir. 1996).

As the discussion below will indicate, this court is convinced Congress has expressly prescribed the "proper reach" of § 105(a)(5)(A) to be that it applies prospectively, not retrospectively. Thus, the Commissioner's interpretation of the act does not prevail. Moreover, even under the erroneous reading advocated by the Commissioner in this case, the statute would manifestly fall within the *Landgraf* definition of "retroactive effect" as it would "impair rights a party possessed when [s]he acted," *Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505; *Scheidemann,* 83 F.3d at 1521. Again, the Commissioner's view cannot prevail because the court concludes there is no "clear congressional intent favoring such a result."

In determining whether a statute acts retrospectively, the Supreme Court's majority opinion in *Landgraf* gave special consideration to a definition of retroactivity proffered

by Justice Story: "Every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective." *Landgraf,* 511 U.S. at 270, 114 S.Ct. at 1499 (quoting *Gospel v. Wheeler,* 22 F.Cas. 756 (No. 13, 156) (C.C.D.N.H. 1814)). Thus, in determining whether a statute has a retroactive effect, "the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf,* 511 U.S. at 270, 114 S.Ct. at 1499.

It is quite clear that interpreting the statute in the manner suggested by the Commissioner would have a retroactive effect because it would take away rights already acquired under existing laws. The vast majority of plaintiff's claim for disability benefits in this case concerns benefits for disability suffered in the past—plaintiff primarily seeks back benefits. At the time plaintiff originally filed her application for benefits in 1991, there is no doubt that recovery was available for alcoholism and drug addiction. *See, e.g., Jones v. Sullivan,* 954 F.2d 125, 128 (3d Cir.1991); 20 C.F.R. §§ 404.1525(e) & 416.925(e) (1992). To the extent plaintiff was entitled to recover those benefits under the Act, there can be no doubt that she had a legitimate entitlement and property interest in those benefits. *See Goldberg v. Kelly,* 397 U.S. 254, 262 n. 8, 90 S.Ct. 1011, 1017 n. 8, 25 L.Ed.2d 287 ("It may be realistic today to regard welfare entitlements as more like a 'property' than a 'gratuity.'"); *Kelly v. Railroad Retirement Bd.,* 625 F.2d 486, 489 (3d Cir.1980) ("[Welfare benefits] are a matter of statutory entitlement for persons qualified to receive them."); *Ross v. Horn,* 598 F.2d 1312, 1317 (3d Cir.1979) ("appellants certainly have a property right in receiving unemployment benefits to which they are entitled by statute"), *cert. denied,* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). The only substantial question in this case is when those property rights vested for purposes of determining whether the statute would act retrospectively were the Act interpreted to deny recovery of benefits for past periods.

If plaintiff was in fact entitled to receive disability payments for her past disability, her right to receive those payments exists independently of the Commissioner's determination of her right to those benefits and vests at the time of her alleged disability.[2] "Both in legal and general usage, the normal meaning of entitlement includes a right or benefit for which a person qualifies, and it does not depend upon whether the right has been acknowledged or adjudicated. It means only that the person satisfies the prerequisites attached to the right." *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 477, 112 S.Ct. 2589, 2595, 120 L.Ed.2d 379 (1992). Plaintiff argues that she was disabled as of December 31, 1986. She applied for disability benefits in July of 1991. If the Commissioner did in fact err in his determination of plaintiff's qualification for disability, a conclusion the court expresses no opinion on at this time, then the plaintiff was entitled to disability payments commencing in or before July of 1991. *See* 20 C.F.R. §§ 404.603(b) & 404.621 (1995) (prescribing the number of months before the date of application for which disability benefits may be received); *Dorf v. Bowen,* 794 F.2d 896, 903 (3d Cir.1986) (plaintiff whose claim is wrongfully adjudicated by the Commissioner is entitled to benefits from onset date of claimed disability)—well before the enactment date of the Right to Work Act. The Commissioner's determination as to the plaintiff's right to these benefits was not necessary in order for the right to vest. *See Cowart,* 505 U.S. at 477, 112 S.Ct. at 2595. If the Commissioner was indeed incorrect, the plaintiff's rights to those benefits vested despite the Commissioner's erroneous determination. To allow the Act to take away those vested rights would be precisely the type of "new provision attaching new consequences to events completed before its enactment" which the Supreme Court held to be retroactive in *Landgraf. Landgraf,* 511 U.S.

---

2. Indeed, this is precisely what the court held in *Landgraf.* The defendant in that case was entitled to have the benefit of the statute in effect at the time he acted, not at the time his rights under the statute were adjudicated.

at 270, 114 S.Ct. at 1499; *accord Scheidemann,* 83 F.3d at 1522.

Thus, it is clear that the Commissioner's interpretation of the statute would lead to a retroactive application by taking away insurance benefits for previous months in which the law was clear that disability benefits were available for alcoholism and drug addiction. *See* Def.'s Sur-reply at 6–7 (Arguing that "an individual who had received an unfavorable determination initially and on reconsideration prior to the enactment of the drug addiction and alcoholism provision could not be. awarded benefits on the basis of drug addiction or alcoholism *even if it could be determined subsequently that benefits could have been awarded on that basis at that time.*") (emphasis added); *see also Santos,* 942 F.Supp. at 64 ("The fact that the review process ran past March 1996 should not deprive plaintiff of benefits a timely, correct decision would have given him.").

While the court would give effect to such a retroactive provision if Congress had clearly expressed its desire to apply the act retroactively, such an intention is not evident in this case, and the language of the statute does not require a retroactive result.

### B. *The "Disability Interpretation" of the Statute*

█ As demonstrated above, interpreting the statute under the "adjudication interpretation" seems to yield unfavorable results; results it is unlikely Congress intended. As discussed below, the more plausible reading of the statute which does not impute a retroactive result, would be to read the statute as barring claims for *disabilities* which occur "on or after the enactment" of the Right to Work Act. Not only is such a result plausible, but the "necessary implication of the statute taken as a whole ... [and] the statute's legislative history" indicate that the statute was intended to apply prospectively, not retrospectively. *Scheidemann,* 83 F.3d at 1521.

Under the "disability interpretation," one must analyze each of the two clauses separately. When this is done, it becomes clear that the first clause acts as a general prohibition on receipt of benefits for post-enactment periods of disability. The second clause, however, creates a limited exception for those who have both applied for and been adjudicated as being entitled to disability benefits before the enactment date of the statute.

In order to read the statute under the "adjudication interpretation" it would be necessary to remove key portions of the statute's first clause. For example, the court in *Armstrong* quoted the statute as encompassing those "whose claim is finally adjudicated ... on or after the date of enactment...." *Armstrong,* 949 F.Supp. at 810 (first ellipsis in original). The language represented by the first ellipsis cannot be removed without changing the meaning of the statutory language. When the language left out of the ellipsis is returned, the meaning of the clause changes significantly:

> The amendments ... apply to any individual who applies for, or whose claim is finally adjudicated by the Commissioner of Social Security with respect to, benefits under title II of the Social Security Act based on disability on or after the date of the enactment of this Act....

§ 105(a)(5)(A), 110 Stat. at 853.

When the statute is read as a whole, it becomes clear that the phrase "applied for" as well as the term "finally adjudicated by the Commissioner" relates to the type of "benefits" encompassed by the statute (benefits which individuals have applied for and benefits which have been finally adjudicated).[3] The statute then goes on to describe what type of "benefits" are excluded when they are "applied for" or "finally adjudicated by the Commissioner"—those benefits are "benefits under title II of the Social Security Act *based on disability on or after the date of the enactment of this Act.*" Thus, "on or

---

**3.** This is supported by the way the drafters used commas in preparing the statutory language. A comma is placed after "applied for" and a comma is placed after "with respect to." It is thus clear that the drafters were specifying two different groups of potential suitors of benefits who would be unable to receive them.

after the date of the enactment of this Act" modifies not the application for or adjudication of benefits, but the disability for which the claimant seeks benefits.[4] Under this interpretation, the first clause of the statute precludes receipt of benefits which are based on post-enactment date periods of alcoholism or drug addiction disabilities.

Clause two, on the other hand, acts as an exemption from the general exclusion of benefits based on post-enactment disabilities in clause one. Here, the statute does reference the actual date upon which a determination was made. In that clause the drafters stated:

> in the case of any individual who has applied for, and whose claim has been finally adjudicated by the Commissioner with respect to, such benefits before such date of enactment, such amendments shall apply only with respect to such benefits for months beginning on or after January 1, 1997.

§ 105(a)(5)(A), 110 Stat. at 853 (emphasis added).

In this clause there is no mention of "disability" which "before such date of enactment" would apply to. Rather, in this case, "before such date of enactment" does relate to "applied for" and "adjudicated by." Thus, if an individual has *both* applied for benefits, *and* been adjudicated as being entitled to those benefits before March 29, 1996, then that individual may continue to receive benefits for a limited period of time—even though those benefits might be based in part on a post-enactment disability.

Thus, clause one states a general proposition: the amendments apply to benefits based on post-enactment date disability, whether those benefits have been applied for *or* adjudicated. But clause two carves out a limited exception. If an individual has *both*

applied for disability benefits for alcoholism or drug addiction *and* been adjudicated as entitled to "such benefits" before March 29, 1996, then that person may continue to receive those benefits until January 1, 1997, during which period those recipients are given an opportunity to prove that alcoholism or drug addiction is not "a contributing factor material to the Commissioner's determination that the individual is disabled." *See* § 105(a)(5)(C), 110 Stat. at 853 (requiring notice to those who would be cut off from disability insurance and giving those persons an opportunity to reapply for benefits).

When the two clauses are read together the effect of the statute is to allow those who were already receiving benefits for disabilities based on alcoholism or drug addiction to continue to receive monthly benefits until January 1, 1997. This exemption, however, will not protect parties who either apply for post-enactment period benefits based on alcoholism or drug addiction after the date of enactment, or are adjudged to be entitled to post-enactment period benefits after the date of enactment.[5]

The legislative history of the statute also clearly indicates that Congress did not intend the amendments to apply retroactively. The House Report describing the effective date provisions in § 105 of the Right to Work Act provides:

> Effective Date.
>
> Generally, changes apply to benefits for *months* beginning on or after the date of enactment. However, an individual entitled to benefits before the month of enactment would continue to be eligible for benefits until January 1, 1997.

H.R.Rep. No. 379, 104th Cong., 1st Sess., § 7 (1995), *available on* Westlaw, 1995 WL 717402 (emphasis added) [hereinafter "House

---

4. Again, this is supported by the grammatical structure of the sentence. If the drafters had intended "after the date of the enactment of this Act" to modify "finally adjudicated by the Commissioner", it would have been natural to at least place a comma after "disability" thus suggesting that the phrase "on or after the date of enactment" modifies the beginning of the sentence, rather than the text which immediately proceeded it.

5. It also is significant that Congress used the language "shall apply only with respect to such benefits *for months* beginning on or after January 1, 1997." The fact that the drafters phrased the discontinuation of benefits in terms of months suggests that they were thinking in terms of a monthly flow of benefits. Thus, the drafters contemplated that prospective monthly payments would continue for the exempted group only through January 1, 1997.

Report 379"]. This statement makes clear that Congress contemplated a prospective application of the Act—the effective date was intended to apply only "for *months* beginning on or after the date of enactment." The Act was not, therefore, intended to take away monthly benefits which may have accrued before the enactment date.

Finally, this reading of the statute is supported by a decision rendered in this district by Judge Padova.[6] In *Cordova–Torres v. Chater*, 950 F.Supp. 661 (E.D.Pa.1996), *appeal filed*, No. 96–1833 (3d Cir. Oct. 4, 1996), the court followed the disability interpretation of the statute by determining that "on or after the effective date" modified "disability" and not the date the application was filed or the adjudication finalized. *See id.* at 665 ("Torres' case does not fall within the first clause addressing individuals who apply for benefits based on disability on or after the

date of enactment of the Act.... At no time did Torres allege disability on or after March 26, 1996."). Because the claimant in that case did not seek benefits for disability after the effective date, the court determined that the effective date provision *did not apply. See id.*

■ To the extent that Teitelbaum seeks payments for disability which occurred before the effective date of the Right to Work Act, the conclusion is the same—the Act does not apply. Thus, if the court determines that the Commissioner's decision regarding the December 31, 1986 onset of disability date was not supported by substantial evidence, Teitelbaum is entitled to receive back-benefits for months preceding the enactment date of the Right to Work Act.[7]

---

**6.** At least one other court considered applying the disability interpretation but opted for the adjudication interpretation:

> In interpreting the amendment's clause regarding the effective date, the court considered the possibility that "on or after the date of enactment" actually modifies "disability," rather than "who applies for, or whose claim is finally adjudicated," due to the positioning of these phrases within the amendment's text as well as the fact that the concept of the onset date is a critical element in making disability determinations. If this were the case, then only those claimants whose disability actually begins after March 29, 1996, would receive no benefits. The practical effect of this alternative interpretation would be to allow claimants who file for disability insurance benefits ("DIB") after the date of enactment but allege onset before enactment to be eligible for a closed period of benefits.... The court rejected this alternative because a claimant for benefits after the date of enactment does so under a new law and should therefore not be entitled to any benefits arising from a disability which the law no longer recognizes.

*Willis*, 939 F.Supp. at 1240 n. 5.

While it is true that one may be entitled to apply for pre-enactment benefits up to March 29, 1996, it is not a novel concept for a claimant to be entitled to benefits "which the law no longer recognizes" if the claimant was entitled to recover those benefits under the law at the time at which he acted. *See, e.g., Landgraf*, 511 U.S. at 270, 114 S.Ct. at 1499; *id.* at 286, 114 S.Ct. at 1524 (Scalia, J., concurring) ("Most statutes are meant to regulate primary conduct, and hence will not be applied in trials involving conduct that occurred before their effective date."). Further, it is not unreasonable to believe that Congress would tolerate applications for past bene-

fits based on alcoholism or drug addiction to continue for the limited period in which they may be claimed—no more than one year before the effective date of the statute. *See* 42 U.S.C. § 402(j); 20 C.F.R. §§ 404.603 & 404.621. Indeed, given the presumption against retroactivity, the court should be more willing to read the statute prospectively, rather than retrospectively.

**7.** The Commissioner argues that his interpretation of the Act is entitled to deference under *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). It is certainly true that it is appropriate "to defer to the reasonable judgments of agencies with regard to the meaning of ambiguous terms in statutes that they are charged with administering." *Smiley v. Citibank*, —— U.S. ——, ——, 116 S.Ct. 1730, 1733, 135 L.Ed.2d 25 (1996). Deference, however, is not appropriate in this case.

First, to the extent that the statute is ambiguous with regard to retroactive application to benefits which have accrued prior to the enactment date of the statute, it does not appear that this is a circumstance where Congress left an ambiguity in the statute with the intent that the agency fill in the missing gaps. *Cf. Smiley*, —— U.S. at ——, 116 S.Ct. at 1733 ("We accord deference to agencies under *Chevron* ... because of a presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency...."). Any ambiguity in this statute is more likely due to imperfect draftsmanship, not Congressional intent to allow the Commissioner to "fill in the gaps."

Second, the court does not believe the statute is ambiguous. As discussed at length above, it is

## II. The Plaintiff is Not Entitled to Prospective Benefits for Months After March 29, 1996.

While the new statute does not affect the plaintiff's right to benefits based on months of disability prior to March 1996, the question still remains as to Teitelbaum's entitlement to benefits for the period of March 1996 through January 1, 1997. It is at this point that the court is required to interpret the term "finally adjudicated by the Commissioner." Only a claimant "who has applied for, *and whose claim has been finally adjudicated by the Commissioner with respect to,* such benefits before the date of enactment" may continue to receive benefits through January 1, 1997. The Court agrees with much of the argument presented in the Commissioner's brief and much of the analysis of the Magistrate Judge in determining whether a plaintiff is entitled to receive benefits based on disability after March 29, 1996 when the Commissioner has given a negative determination to the plaintiff and the plaintiff appeals to the district court. Because the exemption in § 105(a)(5)(A) was not intended to allow any *new* benefits based on disability after the enactment date, plaintiff is not entitled to those benefits.

As discussed at length above, the purpose of § 105(a)(3) is "to prevent any further awards of benefits for drug and alcohol-related disabilities, and to provide for a phase-out period for those already receiving such benefits." *Magistrate Judge's Report and Recommendation* at 3. Section 105(a)(5)(A) merely creates a limited exemption whereby those who have already been adjudicated as entitled to benefits may continue to receive benefits for a limited period after the enactment date. The fact that the language of the statute speaks in terms of "finally adjudicated by the Commissioner" is likely a result of Congress' not considering the possibility of court review. *See* Def.'s Sur-reply at 7. If Congress fails to consider an issue, the proper role of this court is to give the statute a meaning which fulfills its purpose as a whole. *See Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, ——, 115 S.Ct. 1061, 1069, 131 L.Ed.2d 1 (1995); *United States v. Koppers Co.,* 348 U.S. 254, 261, 75 S.Ct. 268, 271, 99 L.Ed. 302 (1955). The purpose of this exemption is to allow benefits to continue for those already receiving benefits, pending their opportunity to prove that the amendments should not apply to cut off their benefits, *see* § 105(a)(5)(C), 110 Stat. at 853; House Report 379 (explaining that benefits continue for those previously entitled to them while they have an opportunity to reapply); a result arguably required by the Due Process Clause. *See Goldberg,* 397 U.S. at 261–66, 90 S.Ct. at 1016–20. It simply does not matter whether that adjudication is by the Commissioner or by a court.[8]

---

quite clear that Congress did not intend the Act to apply retroactively. "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9.

Finally, even if the court felt the statute was ambiguous, it would not give deference to the agency's interpretation because "[d]eference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 212, 109 S.Ct. 468, 473, 102 L.Ed.2d 493 (1988); *accord Smiley,* —— U.S. at ——, 116 S.Ct. at 1733. While deference may be owed to an administrative interpretation presented in litigation if that position is "neither tactical nor inconsistent," *Skandalis v. Rowe,* 14 F.3d 173, 178 (2d Cir.1994), here the Commissioner's position is clearly tactical as she is a party to this litigation, attempting to support the denial of claims made by her at the administrative level. Further, there is no evidence that the

Commissioner's position has been expressed in a non-litigation context. The defendant's citation to *Social Security Administration Interim Instruction #* 4, ¶D in its brief was reviewed by the court. It does not support the proposition that the act applies retroactively to months of disability before the enactment date.

8. Despite the fact that legislation has been introduced in the House of Representative which would make it clear that a claim would "not be considered finally adjudicated ... if ... there is pending a request for either administrative or judicial review with respect to such claim," Social Security Miscellaneous Amendments Act of 1996, H.R. 4039, 104th Cong., 2nd Sess. (1996), that bill should not be given any weight by this court, particularly in view of the fact that the Senate has taken no action whatsoever with reference to it. A pronouncement by Congress is of no relevance unless it is passed by both houses of Congress and signed by the President. *See INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).

Thus, the section is not designed to allow persons like Teitelbaum to receive a new stream of post-enactment payments for a disability which is no longer recognized as of March 29, 1996. This is especially true in light of the fact that Teitelbaum concedes that alcoholism or drug addiction is a material factor contributing to her disability. There is no need to grant plaintiff an extension of her benefits pending a determination of her continued eligibility, because she concedes that she is no longer eligible under the new legislation.

Further, unlike the case of benefits which accrued before the effective date of the act, the plaintiff in this case has no property right at stake for benefits after March 29, 1996 and there is no concern with retroactive application for those benefits. There is a significant difference between Congress' applying a change in an entitlement program prospectively versus attempting to work a retroactive change in the same program.[9] While constitutional concerns may arise if Congress is to retroactively change entitlements under a social welfare program,[10] "[t]he procedural component of the Due Process Clause does not 'impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits.'" *Atkins v. Parker,* 472 U.S. 115, 129, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985). Congress was entitled to determine that DIB payments for alcoholism and drug addiction were to cease as of the date it enacted the Right to Work Act. Thus, plaintiff had no right or expectation to the benefits she seeks for months after March 29, 1996. *See id.* ("Before the statutory change became effective, the existing property entitlement did not qualify the legislature's power to substitute a different, less

valuable entitlement *at a later date.*") (emphasis added). The fact that Congress chose to create a limited exception for those who were already receiving benefits, is appropriate so long as it is rationally related to a legitimate purpose. *See Weinberger v. Salfi,* 422 U.S. 749, 769–71, 95 S.Ct. 2457, 2468–70, 45 L.Ed.2d 522 (1975).[11] Congress' determination in this case meets that standard.

Thus, the court concludes that the Act was not intended to allow a plaintiff to receive benefits based on disabilities continuing after March 29, 1996, unless the plaintiff was previously adjudicated to be entitled to those benefits. The fact that the plaintiff may have a judicial appeal pending on the Commissioner's denial of post March 29, 1996 benefits does not affect this conclusion.

\* \* \*

In summary, the court concludes that the amendments in the Right to Work Act are not intended to apply to claims for benefits pending at either the judicial or the administrative level for months of disability preceding the enactment date of the amendments. The act does, however, prevent plaintiffs such as Teitelbaum from obtaining benefits for months after March 29, 1996 based on alcoholism or drug addiction unless that plaintiff had been adjudicated as entitled to those benefits on or before March 29, 1996. The defendant's motion for summary judgment for past monthly benefits accruing before March 29, 1996 will be denied. The defendant's motion for summary judgment for DIB payments for months following March 29, 1996, however, will be granted. Plaintiff's motion for summary judgment will be denied without prejudice. The case will be remanded to the Magistrate Judge for a report and recommendation as to whether

---

9. It should be noted that using a March 29, 1996 cut off date is significantly less harsh and arbitrary where the plaintiff is only losing future benefits to which she had no entitlement. Further those future benefits would encompass, at most, 8 months of benefits. Thus, the court's interpretation of the "finally adjudicated by the Commissioner" language takes on considerably less significance than it did for those courts which have hinged all benefits—past and future—on the interpretation of this language.

10. *See Landgraf,* 511 U.S. at 267–68 n. 21, 114 S.Ct. at 1498 n. 21 ("In some cases ... the

adjudication of constitutional questions will counsel against a retroactive application. For if a challenged statute is to be given retroactive effect, the regulatory interest that supports prospective application will not necessarily also sustain its application to past events.").

11. Plaintiff does not contend that drug addicts and alcoholics are a suspect class subject to special protection under the Equal Protection Clause.

the Commissioner's decision regarding those benefits was supported by substantial evidence.

## ORDER

AND NOW, this 17 day of December, 1996, after consideration of the Report and Recommendation of the Magistrate Judge, and the memoranda in support of the parties' motions for summary judgment and their replies thereto, it is HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is DENIED WITHOUT PREJUDICE.

2. Defendant's motion for summary judgment with respect to disability insurance benefits for months before March 29, 1996, insofar as that motion is based on recent amendments found in the Senior Citizen's Right to Work Act of 1996, Pub.L. No. 104–121, 110 Stat. 847–57 (1996), is DENIED.

3. Defendant's motion for summary judgment with respect to disability insurance benefits for months after March 29, 1996 is GRANTED.

4. The balance of Defendant's motion for summary judgment is DENIED WITHOUT PREJUDICE.

5. The case is REMANDED to the Magistrate Judge for a report and recommendation as to whether the Commissioner's decision denying benefits for months before March 29, 1996 was supported by substantial evidence.