In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2572

James O'Kane,

Plaintiff-Appellant,

v.

Kenneth S. Apfel, Commissioner
of Social Security,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 CV 6589--Blanche M. Manning, Judge.

Argued March 27, 2000--Decided August 23, 2000

Before Flaum, Chief Judge, and Posner and Williams,
Circuit Judges.

Williams, Circuit Judge.  In 1993, James O'Kane applied for disability benefits. The Social Security Administration denied his application. After unsuccessfully appealing his claims administratively, O'Kane filed suit against Kenneth S. Apfel, the Commissioner of Social Security ("Commissioner"), asking the district court to reverse the decision of the Administrative Law Judge who denied O'Kane's benefits claims. Both parties moved for summary judgment. The district court denied O'Kane's motion for summary judgment and granted the Commissioner's cross-motion for summary judgment. O'Kane now appeals, and we affirm.

I

On February 17, 1993, O'Kane applied for disability benefits under the Social Security Act ("Act"), 42 U.S.C. sec.sec. 416(i), 423, 1382, on the basis of his alcoholism. On May 6, 1993, the Social Security Agency ("Agency") denied O'Kane's application for benefits. For the next four years, O'Kane continued to pursue his claims through administrative channels. At each step, his claims were denied.

Meanwhile, Congress amended the Social Security

Act in 1996 to prohibit the payment of social security disability benefits based on an applicant's alcoholism or drug addiction. See Contract with America Advancement Act of 1996, Pub. L. 104-121, 110 Stat. 847. The Act now provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subchapter) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. sec. 423(d)(2)(C).

On September 18, 1997, after exhausting his administrative remedies, O'Kane timely filed a complaint in the United States District Court for the Northern District of Illinois. The parties filed cross motions for summary judgment. O'Kane moved for summary judgment on the ground that the decision to deny him benefits was not supported by substantial evidence. The Commissioner, in his motion for summary judgment, argued solely that the 1996 amendments to the Act ("Amendments") barred O'Kane's 1993 benefits application.

The district court ruled in the Commissioner's favor. The court found that the Amendments apply to claims for benefits pending in the Agency as of March 29, 1996 and bar O'Kane, as a matter of law, from receiving disability benefits. The district court's decision to grant the Commissioner's motion for summary judgment presents a pure question of law, which we review de novo, accepting as true all of O'Kane's evidence and drawing in his favor all reasonable inferences. See Reed v. McBride, 178 F.3d 849, 852 (7th Cir. 1999).

II

The dispute in this case centers around the Amendments' effective date provision. The Amendments

apply to any individual who applies for, or whose claim is finally adjudicated by the Commissioner of Social Security with respect to, benefits under [this subchapter] based on disability on or after [March 29, 1996], and, in the case of any individual who has applied for, and whose claim has been finally adjudicated by the Commissioner with respect to, such benefits before [March 29, 1996], such amendments shall apply only with respect to such benefits for months beginning on or after January 1, 1997.

42 U.S.C. sec. 405 (note) (emphasis added). O'Kane argues that "on or after March 29, 1996" applies to the date of an applicant's disability. Under this "disability interpretation," O'Kane

would be entitled to benefits based on his alcoholism from the time he applied for them,/1 February 17, 1993, until March 29, 1996. The Commissioner argues, on the other hand, that "on or after March 29, 1996" modifies the clause "who applies for" and the clause "whose claim is finally adjudicated by the Commissioner." Under this "adjudication interpretation," O'Kane would not be entitled to any benefits because his claims were not finally adjudicated prior to March 29, 1996.

The Third and Eighth Circuits have adopted the adjudication interpretation. See Adams v. Apfel, 149 F.3d 844, 846 (8th Cir. 1998); Torres v. Chater, 125 F.3d 166, 171 (3d Cir. 1997)./2 Before today, we had not decided whether to adopt either the adjudication or the disability interpretation. See Maggard v. Apfel, 167 F.3d 376, 379 (7th Cir. 1999) (electing not to decide between the disability and adjudication interpretations). Today, we adopt the adjudication interpretation.

A.  Plain Language of Statute

The plain language of the Amendments supports the adjudication interpretation. When interpreting congressional statutes, we first look at the plain language of the statute because that is the best way to determine congressional intent. See Reves v. Ernst & Young, 507 U.S. 170, 177 (1993); United States v. Hayward, 6 F.3d 1241, 1245 (7th Cir. 1993) (holding that "when the language of a statute is clear and unambiguous, no need exists for the court to examine the legislative history, and the court must give effect to the plain meaning of the statute").

The disability interpretation muddles the second half of the effective date provision./3 We agree with the Third Circuit that concluded:

when the disability interpretation is applied to the second category, the fallacy of [the disability interpretation] becomes apparent. The point is illustrated by repeating below the language that applies to the second category and inserting the modifying language from the first category in brackets. It reads: "[A]nd in the case of any individual . . . whose claim has been finally adjudicated by the Commissioner with respect to, such benefits [based on disability] before [March 29, 1996], such amendments shall apply only with respect to such benefits [based on disability before March 29, 1996] for months beginning on or after January 1, 1997."

Torres, 125 F.3d at 171.

O'Kane argues that there is no reason to insert "based on disability" into the second half of this effective date provision. He claims that the second category simply carves out a limited exception to the first category where eligibility is pegged to the date of disability. He contends that the exception creates a limited grace period for those individuals whose claims were finally adjudicated prior to March 29, 1996--they are eligible to receive benefits until January 1, 1997. Finally, O'Kane asserts that the date of disability is not relevant to this exception.

We are not convinced by O'Kane's argument. Both clauses of the effective date provision are parallel in structure. Apart from Congress' use of "such" in the second clause to avoid repetition, both clauses have precisely the same grammatical and textual structure. Consequently, if O'Kane is going to argue that the effective date modifies disability in the first clause, then the date must also modify disability in the second clause. The result makes little, if any, sense. For example, it is impossible to determine whether benefits are due for alcoholism disabilities between March 29, 1996 and January 1, 1997. Consequently, we find that the adjudication interpretation is the clearer approach. Accord Adams, 149 F.3d at 846; Torres, 125 F.3d at 171.

The disability interpretation would make the "finally adjudicated" language superfluous. Courts should interpret statutes so as to "give effect, if possible, to every clause and word." In re Lifschultz Fast Freight Corp., 63 F.3d 621, 628 (7th Cir. 1995). If the date of disability governs, then the date of final adjudication is irrelevant. O'Kane argues that the term "finally adjudicated" makes clear that the Amendments do not simply apply to those who apply for post-March 1996 benefits but also to those who have already been declared eligible to receive post-March 1996 benefits. O'Kane's interpretation, however, would create more superfluous language. If the disability interpretation is correct, Congress could have simply stated that the Amendments apply to individuals who are claiming disability benefits under this subchapter for claims after March 29, 1996. See Torres, 125 F.3d at 170-71 (finding that "if an individual files a claim based upon a post-enactment disability, then the date of final adjudication would be irrelevant because the claim would have been void ab initio").

O'Kane counters that the adjudication interpretation renders superfluous at least two phrases of the effective date provision. First,

the adjudication interpretation renders superfluous the phrase "who applies for." Under the adjudication interpretation, the availability of benefits depends upon the date a claim is adjudicated. Consequently, O'Kane argues that the date on which one applies is irrelevant. While O'Kane may be technically correct, the phrase "who applies for" is useful for differentiating the statute's two clauses. For claimants who have filed but not had their claims finally adjudicated, the Amendments are effective on March 29, 1996. The Amendments are not effective until January 1, 1997, however, for a filed claim that has been finally adjudicated.

Second, O'Kane claims that the adjudication interpretation renders the phrase "based on disability" superfluous. The adjudication interpretation precludes benefits to any individual "whose claim is finally adjudicated by the Commissioner . . . on or after March 29, 1996." This interpretation reads the same with or without the phrase "based on disability." This phrase is useful, however, because the relevant subchapter of the Act includes not only disability benefits but also other types of Social Security benefits--e.g., benefits for old age, survivors, and the blind.

Finally, O'Kane argues that the last antecedent rule of statutory construction supports the disability interpretation. This rule states "that where one phrase of a statute modifies another, the modifying phrase applies only to the phrase immediately preceding it." Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 832 (9th Cir. 1996); accord Elliot Coal Mining Co. v. United States Dep't of Labor, 17 F.3d 616, 629 (3d Cir. 1994); see also Norman J. Singer, Sutherland on Statutory Construction sec. 47.33 (4th ed. 1985) (stating that "qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent"). Under this rule, "on or after March 29, 1996" modifies disability because "based on disability" immediately precedes "on or after March 29, 1996." While O'Kane correctly applies the last antecedent rule, the result is nonsensical. If the effective date modifies disability, the sentence is missing a verb--e.g., disability "occurred" after March 29, 1996. The Commissioner's approach is simpler--we need only read a comma into the statute, instead of guessing which verb Congress intended. For all of the above reasons, we find that the adjudication interpretation accords more coherence to the effective date provision than the disability interpretation.

B.  Legislative History

Although both sides argue that legislative history supports their interpretation of the effective date provision, the history is not conclusive. Although we find that the statute's language supports the adjudication interpretation, we will address both parties' arguments.

The only report that describes the purpose of the effective date provision states:

Effective Date. Generally, changes apply to benefits for months beginning on or after the date of enactment. However, an individual entitled to benefits before the month of enactment would continue to be eligible for benefits until January 1, 1997.

H.R. Rep. No. 104-379, para. 7 (1995) (available at 1995 WL 717402). Both sides argue that this report supports their interpretation. However, the phrase "changes apply to benefits" does not conclusively answer whether it is "benefits finally adjudicated after March 29, 1996" or "benefits for disabilities after March 29, 1996."

The Commissioner also argues that subsequent amendments enacted by Congress support the adjudication interpretation and explicitly reject the disability interpretation. These amendments state that

an individual's claim . . ., which has been denied in whole before the date of the enactment of this Act, may not be considered to be finally adjudicated before such date if, on or after such date--

(i)  there is pending a request for either administrative or judicial review with respect to such claim, or

(ii)  there is pending, with respect to such claim, a readjudication by the Commissioner of Social Security pursuant to relief in a class action or implementation by the Commissioner of a court remand order.

Ticket to Work and Work Incentives Improvement Act of 1999, Pub. L. No. 106-70 sec. 401, 113 Stat. 1860, 1906 (codified as amended at 42 U.S.C. sec. 405 (note) (1999) [hereinafter Technical Amendments])./4

Contrary to the Commissioner's argument, this language simply clarifies when a claim is "finally adjudicated." The phrase "finally adjudicated" is important under both the adjudication interpretation and the disability

interpretation. It identifies those individuals who are eligible for a grace period--until January 1, 1997--regardless of the date of their disabilities.

The Commissioner also argues that the Technical Amendments were enacted to counter Teitelbaum v. Chater, 949 F. Supp. 1206 (E.D. Pa. 1996), which had adopted the disability interpretation. It is just as likely, however, that the Technical Amendments were promulgated to address several court rulings that held that a claim was "finally adjudicated" when a claimant had exhausted administrative remedies. See, e.g., Newton v. Chater, 92 F.3d 688, 695 n.3 (8th Cir. 1996); Santos v. Chater, 942 F. Supp. 57, 63-64 (D. Mass. 1996). Consequently, the Technical Amendments arguably abrogated these rulings, and not Teitelbaum, by explicitly defining "finally adjudicated" to exclude claims for which there is a pending request for judicial review.

C.   Retroactive Effect

O'Kane also contends that the adjudication interpretation creates an impermissibly retroactive effect. Absent clear congressional intent, courts should presume that legislation does not apply retroactively. See Landgraf v. USI Film Prods., 511 U.S. 244, 265, 272-73, 285-86 (1994). When Congress clearly intends to preclude benefits for applications pending at the time of a statute's enactment, we must follow Congress' wishes. See id. at 280. Moreover, O'Kane is an applicant; he has received no benefits and none has been awarded. While he is entitled to procedural due process, "[t]he procedural component of the Due Process Clause does not 'impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits.'" Atkins v. Parker, 472 U.S. 115, 129 (1984) (quoting Richardson v. Belcher, 404 U.S. 78, 81 (1971)). Consequently, O'Kane has not acquired a substantive property right in his potential benefits based upon pre-Amendment law.

Under the adjudication interpretation, the Amendments would have a retroactive effect. Such an interpretation changes the legal treatment of a disability that arose prior to the date of enactment. Thus, the adjudication interpretation disentitles O'Kane to benefits that had accrued prior to March 29, 1996. Although O'Kane correctly states that the disability interpretation avoids this retroactive result, we find that Congress clearly intended to deny benefits to claims pending on or after March 29, 1996 and that the adjudication interpretation is clearly permissible. See Landgraf, 511 U.S. at

280.

D. Fairness and Justice

Finally, O'Kane argues that the disability interpretation avoids unfairness and injustice. When construing statutes, courts should avoid "absurd and unjust consequences." Grebe v. Wheeler Catering Co. (In re Andrews), 172 F.2d 996, 999 (7th Cir. 1949). "[S]tatutes should be construed in the most beneficial way the language will permit to prevent absurdity, hardship, or injustice." Id. O'Kane claims that the adjudication interpretation denies him alcoholism benefits because of a prejudicial delay caused by an error on the part of the administrative court. While this may be true, Congress deliberately precluded benefits to pending claims. "[D]rawing lines is the business of Congress and inevitably individuals on the wrong side of the division do not fare well. The result is unfortunate for those adversely affected, but arbitrariness is often unavoidable." Torres, 125 F.3d at 171.

III

For the foregoing reasons, the opinion of the district court is Affirmed.

/1 See 20 C.F.R. sec. 416.335 (SSI benefits are payable as of the application date).

/2 The Ninth Circuit will probably adopt the adjudication interpretation as well. See Hiblar v. Apfel, 205 F.3d 1351 (9th Cir. 1999) (table) (text available at 1999 WL 1253218).

/3 The second half of the effective date provision states that "in the case of any individual who has applied for, and whose claim has been finally adjudicated by the Commissioner with respect to, such benefits before [March 29, 1996], such amendments shall apply only with respect to such benefits for months beginning on or after January 1, 1997."

/4 The Technical Amendments noted that "The amendments made by this section [amending this note] shall take effect as if included in the enactment of section 105 of the Contract with America Advancement Act of 1996 (Public Law 104-121; 110 Stat. 852 et seq.)."