Donald F. GREENO, Plaintiff–
Appellant,

v.

Kenneth S. APFEL, Commissioner
of Social Security, Defendant–
Appellee.

No. 00–2873.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 13, 2000.

Decided Feb. 7, 2001.

Before HCOFFEY, EASTERBROOK, and MANION, Circuit Judges.

## ORDER

Donald Greeno applied for Supplemental Security Income and disability income benefits while incarcerated in a Wisconsin prison,[1] alleging that his chronic back pain, depression, and gastrointestinal problems rendered him disabled. An Administrative Law Judge (ALJ) determined that Greeno was not disabled, because de-

spite his impairments, he retained the residual functional capacity (RFC) to perform a significant number of jobs in the national economy. The district court upheld the ALJ's decision and also denied Greeno's Rule 60(b) motion. Greeno appeals arguing that the ALJ erred in finding that his impairments did not alone or in combination meet or equal a listed impairment. Because substantial evidence supports the ALJ's decision, we affirm.

## I.

Greeno, a 42–year–old male, has past relevant work experience as a general laborer and a carpenter. He was incarcerated in 1994[2] and, while in prison, obtained his GED. Greeno requested disability benefits in 1995, originally alleging disability due to drug and alcohol addiction.[3] At a hearing before the ALJ, however, Greeno alleged that, beginning in April 1996, he was disabled due to back pain, depression, and gastrointestinal problems. Greeno needed to establish before the ALJ that he was disabled prior to December 31, 1996, the date his insured status expired. *See* 42 U.S.C. § 423(a)(1)(A); *see also Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997).

### A. Back Injury

Greeno first complained of back pain in April 1996 after he injured his back while getting out of his top bunk. X-rays revealed an old compression fracture but no new injuries. Initially Greeno took Motrin for the pain, but after he complained of

---

1. Benefits may not be paid to prisoners. *See* 20 C.F.R. § 404.468(a). Greeno's two minor children, however, are entitled to benefits based on Greeno's earning record. *See id.* § 404.350(a). If disability benefits were properly awarded, they would be payable to Greeno's children as if Greeno were actually receiving benefits. *See id.* § 404.468(a).

2. Since the parties filed their appellate briefs. Greeno has been released on parole.

3. In 1996 Congress amended the Social Security Act to prohibit the payment of social security benefits based on a claimant's drug or alcohol addiction. *See* 42 U.S.C. § 423(d)(2)(C); *O'Kane v. Apfel*, 224 F.3d 686, 687–88 (7th Cir.2000)

feeling sick, doctors prescribed Flexeril and later Soma for pain relief. Greeno was also taught various back exercises.

By mid-May 1996 Greeno could walk and squat without difficulty. But by June he complained of back pain again and requested strong pain medication. One doctor's report suggests "an exaggeration of symptoms with possible psychological overlay." (Soc. Sec. Hrg. Tr. at 416.) Greeno agreed, however, to try physical therapy because he was not to receive any medication other than Naprosyn and Advil. At his second physical therapy session, Greeno reported that he was not doing the lumbar rotation exercises as instructed. He failed to attend the third scheduled therapy session, and after a follow-up meeting where he said his condition had improved, physical therapy sessions were discontinued.

In November 1996 Greeno resumed physical therapy but mentioned that he stopped performing his back exercises. Greeno stated that he could not perform one of the exercises recommended by his doctor because of the limited space in his cell, but the record provides no reason for Greeno to have stopped the others. A July 1997 examination of Greeno revealed a limited range of motion. In September, however, doctors found him to be physically fit to perform any type of work, and by October there were no restrictions on Greeno's activity.

In October 1997 Greeno appeared at the medical clinic with a noticeable limp and requested pain medication. After being told that he would have to wait for his doctor to decide about any medications, Greeno became angry and left the clinic, walking without a limp.

B. Depression

In October 1994, shortly after being incarcerated, Greeno complained of difficulties sleeping, and a psychiatrist prescribed Elavil for him. In mid–1995 Greeno again met with a psychiatrist who noted a history of insomnia and possible mild depressive disorder. Greeno complained of feeling sad, losing his concentration, and missing his family. He participated in counseling sessions to help him adjust to being away from his family, and by January 1996 his therapist noted that Greeno was making progress.

In July 1996 Greeno stated that his depression was manageable without medication, and he denied feeling depressed because he had "worked that out." At a psychiatric evaluation the next month, however, Greeno blamed his sleep and mood problems on being incarcerated, and he reported crying, suicidal thoughts, and low energy. The psychiatrist diagnosed adjustment disorder with depressed mood. Greeno continued to take Elavil for his sleeping problems.

A psychiatric evaluation in November 1996 revealed that Greeno appeared to be very tense and nervous and was speaking quickly and "perseverently." The doctor who examined him noted behaviors inconsistent with therapeutic counseling–limited vocabulary, limited ways of expressing ideas, and inflexibility. An examination in July 1997 and another in October 1997 reveals that Greeno had regressed. He again complained of a depressed mood and sleep difficulties, despite the continued use of Elavil.

C. Gastrointestinal Problems

The first evidence in the record of gastrointestinal problems for Greeno is his use of Tagamet in July 1995 for a history of heartburn. One year later in July 1996, Greeno requested, but was denied, a bland diet for an upset stomach. He was diagnosed with esophagitis after reporting that

Soma, the pain medication for his back injury, caused frequent vomiting, an upset stomach, and ulcers.

In January 1997 doctors diagnosed Greeno with gastrointestinal distress, and in February he spent two weeks in the infirmary. Greeno began taking Omeprazole for gastroesophageal reflux disease. His treating doctor noted, however, that while Greeno was under supervision in the infirmary, there was no evidence of vomiting or weight loss consistent with Greeno's complaints.

Greeno's gastrointestinal problems continued, and in April 1997 he was diagnosed with ulcerative esophagitis and gastritis. The record notes, however, that Greeno exhibited drug-seeking and manipulative behavior. In late 1997 a follow-up examination revealed that Greeno's esophageal ulcer had healed, but he continued to report insomnia as a result of his gastric problems. Greeno's treating doctor noted evidence of marked hypochondriasis.

## D. The ALJ's Decision

In determining that Greeno did not suffer from a disability as defined by the Social Security Act, the ALJ used the standard five-step analysis. *See* 20 C.F.R. § 404.1520. This inquiry required the ALJ to evaluate (1) whether Greeno was employed, (2) whether he had a severe impairment, (3) whether his impairment equaled one of the impairments listed in 20 C.F.R. § 404, Subpt. P.App. 1, (4) whether Greeno could perform his past work, and (5) whether he was capable of working in the national economy.

The ALJ first found that Greeno had not engaged in substantial gainful activity since his incarceration in 1994. Second, the ALJ agreed that Greeno did suffer from severe impairments, including chronic back pain, affective disorder, and a history of treatment for an esophageal ulcer,

gastrointestinal distress, and constipation. At the third step of the analysis, however, the ALJ found that Greeno's impairments were not medically equivalent to those listed. In making this determination, the ALJ noted that Greeno's subjective complaints of pain and limitation were not supported by the objective medical record and by Greeno's treating physicians. The ALJ commented that Greeno's testimony was not fully credible because of inconsistencies in the record as a whole. Further, the ALJ found that Greeno's depression imposed only moderate restrictions on his daily activities. Fourth, the ALJ determined that Greeno retained the RFC to perform work that involved "lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking 4 hours of an 8 hour day; walking 3 blocks at a time; change of positions every 45 minutes; occasional bending and stooping; simple, unskilled work; brief and superficial contacts with supervisors, coworkers, and the public; and low to moderate stress." A vocational expert testified that a hypothetical person with these limitations could not perform Greeno's past relevant work. However, at the fifth step of the analysis, the ALJ found that Greeno could perform a significant number of jobs in the national economy consistent with his RFC.

## II.

We will uphold the ALJ's decision if it is supported by substantial evidence in the record and was reached using correct legal standards. *See Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir.2000). Although we must examine the entire record, we will not "reweigh the evidence or substitute [its] own judgment for that of the ALJ." *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir.2000). Moreover, an ALJ's credibility determinations are usually enti-

tled to great deference, *see Clifford*, 227 F.3d at 872, and we will reverse that determination only if the claimant can demonstrate that it is "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). The ALJ, however, must articulate the bases for his decision so that we can trace the path of the ALJ's reasoning. *See Clifford*, 227 F.3d at 872, 874.

Greeno's general contention on appeal is that the ALJ's decision was not supported by substantial evidence. Specifically, Greeno argues that his impairments satisfied the requirements for a listed impairment, that the ALJ erred by discounting his testimony, and that the ALJ ignored important evidence.

## A. Depression

Greeno first contends that the ALJ erred at step three of the sequential evaluation process by finding that he does not have an impairment or combination of impairments that meet or equal a listed impairment. Greeno asserts that his depression was medically equivalent to the listing for affective disorders. *See* 20 C.F.R. § 404, Subpt. P, App. 1. Under Listing 12.04 a claimant must have a medically documented mental impairment (the "A" criteria) that results in two of the following four listed functional limitations (the "B" criteria): marked restriction of daily living activities; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. The ALJ found that although Greeno's depression combined with his chronic pain disorder met the "A" criteria, his mental impairment did not meet the "B" criteria because it imposed only moderate functional restrictions.

Although Greeno argues that he meets the "A" criteria, he fails to discuss the "B"

criteria and cites to no evidence in the record to dispute the ALJ's conclusion. Because he does not assert that he meets the "B" criteria, he has not established that his depression is equivalent to those impairments listed. *See* 20 C.F.R. § 404, Subpt. P, App. 1 (noting that "[t]he required level of severity for [affective] disorders is met when the requirements in *both* A and B are satisfied") (emphasis added).

## B. Credibility of Greeno's Testimony

■ Greeno next disputes the ALJ's decision not to credit fully his testimony. Greeno argues that his testimony was "credible, documented, not exaggerated, and supported by the evidence as a whole." To bolster his position, Greeno identifies medical reports in the record; many of them, however, have a negative impact on Greeno's credibility argument. One report written by a psychologist following an evaluation of Greeno in April 1997 noted that "there was no indication that [Greeno] is using his medical condition as a means of eliciting sympathy and attention." That same report, however, also considers the possibility of "symptom magnification." Greeno highlights another psychologist's report dated March 1998 that notes Greeno's "disabling physical pain." Again, however, this report does not necessarily bolster Greeno's credibility because it notes Greeno had been "cuffing" his medication. Greeno has not marshaled enough evidence to establish that the ALJ was "patently wrong" in discrediting portions of Greeno's testimony, *Powers*, 207 F.3d at 435, especially in light of the comments in the record the Greeno exhibited "drug-seeking and manipulative behavior" and hypochondriasis.

Further, Greeno asserts that his inability to continue his back exercises was caused by his incarceration and should not

undermine his credibility. Greeno cites a notice in the record that his use of a TENS unit would need to be eliminated due to security reasons. Greeno also argues that he was unable to perform his assigned back exercises because of limited space in his cell. The physical therapy progress report cited by Greeno, however, indicates that space constraints prohibited one particular hamstring exercise, but that "[h]e had no reason for discontinuing the rest of the exercises." Greeno claims that he was on one occasion instructed not to do his back exercises and that the institution refused to restart his physical therapy program. It appears, however, that Greeno is misreading these documents. The note from a doctor instructing Greeno not to perform back exercises was in response to Greeno's written complaint of unresolved back pain. The doctor suggested that Greeno needed to be examined by another doctor regarding the pain, and it appears that the instruction not to do back exercises was a preemptive measure to avoid further injury before a medical examination could determine the cause of Greeno's pain. Additionally, the prison did tell Greeno that it would not restart his physical therapy treatments, but only because it did not have a physician's order to do so. Again, Greeno has not offered sufficient evidence that the ALJ's credibility determination should be reversed.

## C. Additional Evidence

█ Finally, Greeno maintains that the ALJ's decision was not supported by substantial evidence. Greeno contends that the ALJ ignored evidence that his stomach problems limit the types of medication he can take to alleviate pain. Greeno mischaracterizes the ALJ's decision, however, because it specifically mentions Greeno's ulcer and other stomach problems and recognizes that some medications irritate his stomach. Greeno also asserts that the

ALJ ignored that he had tested positive for hepatitis B and C. In his brief, Greeno lists several complications caused by hepatitis that would interfere with his treatment for back pain, but cites no medical evidence in the record. He merely speculates that hepatitis will exacerbate his treatment plan and further limit his ability to work. Although the ALJ did not specifically address Greeno's hepatitis, the record includes no medical information about how that disease affects Greeno's functioning. Lastly, Greeno submits that the ALJ ignored a doctor's report regarding lesions on his face that could be a variant of lupus. Again, however, Greeno offers nothing from the record to indicate that these lesions impaired his functional capacity.

## III.

Because the district court properly concluded that substantial evidence supported the ALJ's decision, we AFFIRM.